Smith vs. Armstrong and another.

## SMITH vs. ARMSTRONG and another.

*Agent — Contract of sale of land — Ratification — Estoppel.*

1. A mill and site had for several years been owned and occupied by A. and E. S. as tenants in common. In October, 1860, E. S.'s undivided half was sold to satisfy a mortgage given by him and his wife in 1855, and was bid in by C., who, on the 20th of November following, conveyed it to the wife of E. S., but the deed was not recorded until 1862. On the 27th of November, 1860, E. S. contracted.in writing with A. to convey to him said undivided half, the contract appearing on its face to be his own and not that of his wife; and it was recorded in 1861. Immediately after its execution, A. took possession of the whole premises, and has ever since continued in the open and notorious occupation and control thereof, has made some improvements, paid part of the price, and offered to pay the residue. E. S. testifies that he procured the deed from C. to his wife without her direction, and that in these transactions he was acting for her, though without any specific directions from her. It does not appear that said deed was ever delivered to her, or its existence known to her, or that she had any separate estate, or advanced any thing toward paying C. for the land, or toward paying the mortgage debt for which he bid it off. At the time of the sale by E. S. to A., she knew of it and made no objection, but expressed to A. her satisfaction. *Held,*

(1) That E. S. was the real owner of the property when he contracted to sell to A., and the latter, having bargained for it with no knowledge or constructive notice that the legal title was in the wife, is entitled to be protected.

(2) That, in any event, Mrs. S. must be regarded as having *ratified* the sale to A., or as being *estopped* from denying its validity.

(3) That the plaintiff, who took a deed of the land from E. S. and wife in 1866, with at least constructive notice of A.'s rights, should be decreed to convey it to A., on payment to him by the latter of the balance of the purchase-money.

2. An agent without written authority from his principal may bind him by a *contract of sale* of land. *Dodge v. Hopkins* (14 Wis. 630), followed. And, when one claiming to act as such agent, has entered into such contract, a *written* ratification is not necessary.

APPEAL from the Circuit Court for *Winnebago* County.

Ejectment. Plaintiff claimed as grantee of one Elbridge Smith, and Caroline J. Smith, his wife. The

defendant *Armstrong*, upon the facts alleged in his answer, demanded judgment, 1. For an accounting, to determine the amount due from him as purchase-money for the premises in dispute, upon a sale thereof alleged to have been made to him by Elbridge Smith, with the full knowledge and consent of his wife. 2. That upon payment by him into court of the amount found due, plaintiff be required to convey to him (said *Armstrong*) all the interest claimed by plaintiff as grantee of said Elbridge and Caroline J. Smith.

The court found all the material allegations of the answer true, and rendered judgment as therein demanded; from which plaintiff appealed.

The facts alleged and proven by *Armstrong* will sufficiently appear from the opinion.

*A. Ballard*, for appellant:

1. The contract between Elbridge Smith and *Armstrong* did not bind Caroline J. Smith. A written contract, made by an agent, in order to bind the principal, must purport, on its face, to be made by the principal, and must be executed in his name, and not in that of the agent. It cannot be shown by parol that the alleged agent, in signing his own name, in fact signed as agent. The court erred in admitting the contract to be read in evidence. *Evans v. Wells*, 22 Wend. 324, and cases there cited; *Williams v. Christie*, 4 Duer, 29; *Brandeis v. Neustadtl*, 13 Wis. 142. It was absolutely void as to Mrs. Smith; and a contract void under the statute of frauds does not admit of a ratification. 2. Counsel contended upon the evidence that Mrs. Smith was not estopped by her silence in reference to a contract, the terms of which she did not know; and that her subsequent execution of a deed to the plaintiff shows that she repudiated the contract entered into by her husband. 3. He also contended that the contract, being by parol, was void by the statute of frauds; and that there were no facts in evidence sufficient to take the case out of the

statute; and in particular, that there was no proof that *Armstrong's* possession was referable exclusively to the contract, since that did not provide for his going into possession, and since, at the time the contract was made, he was already in possession as tenant in common with Mrs. Smith. Nothing is to be considered as a part performance sufficient to take the case out of the statute, which does not put the party into a situation that is a fraud upon him, unless the agreement is fully performed. Story's Eq. Jur., § 761; *Savage v. Foster*, 9 Mod. 37; *Wolfe v. Frost*, 4 Sandf. Ch. 72; *Smith v. Finch*, 8 Wis. 245. 4. If the making of the contract, or its essential terms, are left in doubt, a specific performance ought not to be decreed. *Knoll v. Harvey*, 19 Wis. 99.

*Gabe Bouck*, for respondent, argued that the court below was justified by the evidence in finding that Elbridge Smith had authority from his wife to make the contract of sale. 2. If he had no authority, Mrs. Smith is bound by her subsequent ratification. *Com. Bank v. Warren*, 15 N. Y. 577; 24 Ill. 387; *Lowenstein v. McIntosh*, 37 Barb. 251. Her mere silence would authorize the court to presume a ratification. *Benedict v. Smith*, 10 Paige, 127; *Bridenlecker v. Lowell*, 32 Barb. 9; *Frothingham v. Haley*, 3 Mass. 70; *Shaw v. Nudd*, 8 Pick. 9; *Thayer v. White*, 12 Met. 343; *Johnson v. Wingate*, 29 Me. 404. Equity will enforce the contract, though not made in the name of the principal. *Rogers v. Bracken*, 15 Tex. 564; *Robbins v. Butler*, 24 Ill. 387. 3. Mrs. Smith is estopped from contesting the sale. *Gatling v. Rodman*, 6 Ind. 291; *Hartman v. Kendall*, 4 id. 403; *State v. Holloway*, 8 Blackf. 47; *Wendell v. Van Rensselaer*, 1 Johns. Ch. 346; *Storrs v. Barker*, 6 id. 166; *Lee v. Porter*, 5 id. 268; *Town v. Needham*, 3 Paige, 545; *Cochran v. Harrow*, 22 Ill. 345; *Godeffroy v. Caldwell*, 2 Cal. 489.

DIXON, C. J. It appears to a majority of this court that this cause was correctly decided by the court below, and that the judgment should be affirmed. The questions involved in the case are chiefly of fact, and concern the defense set up by the defendant *Armstrong*, and his right, as prayed for in his answer, to have a specific performance of the contract entered into between himself and Elbridge Smith. The facts were, that the property in controversy, a mill site and the saw-mill thereon, situated in the village of Menasha, where all the parties in interest resided, except the plaintiff, *Frederick H. Smith*, had, for several years prior to October, 1860, been owned and occupied by the defendant *Armstrong* and Elbridge Smith, as tenants in common. On the 20th of October, 1860, Elbridge Smith's undivided half of the property was sold at sheriffs' sale, to satisfy a mortgage given thereon by him and his wife, Caroline J. Smith, in the month of January, 1855. The property was bid in at the sheriff's sale, and the title taken, by one Cronkhite. On the 20th of November following, Cronkhite conveyed it to the wife, Caroline J. Smith; but that deed was not recorded until the 13th day of February, 1862. On the 27th of November, 1860, seven days after the execution of the deed to his wife, Elbridge Smith entered into the contract in question, to convey the undivided half to the defendant *Armstrong*. That contract appears on its face to be his own, and not executed in behalf of his wife, or as her agent. It was duly acknowledged, and was recorded in the office of the register of deeds on the 3d of October, 1861. Immediately after its execution, *Armstrong* took possession of the whole premises, and has continued in the open and notorious control and occupation of them ever since. At that time, too, Elbridge Smith was considerably involved in debt. He testifies himself that several unsatisfied judgments were standing against him. He also testifies that he procured Cronkhite to bid off the property at the sheriff's sale; that there was some arrangement between them,

though no particular one at the time of the sale; that he procured the deed from Cronkhite to his wife; and that she never directed him to do so. He testifies, generally, that he was acting for his wife, though without any specific directions from her. It does not appear that the deed from Cronkhite was ever in fact delivered by him to his wife, or that she, at the time of the transactions in question, had any knowledge whatever of its existence. Neither does it appear that Mrs. Smith at that time possessed, or ever possessed, any separate estate or property, or that she advanced any thing toward paying Cronkhite for the land, or toward paying the mortgage debt for which he bid it off. But, on the other hand, it is made to appear that she knew at the time that her husband had sold the property, and that she made no objection. Her husband so testifies, and *Armstrong* swears that he had a conversation with her upon the subject, and told her he had bought the mill, and that she said she "was glad her husband had sold the old mill, for he would attend to his business now." Under these circumstances, our conclusion is, that the specific performance of the contract cannot be defeated on the ground that Mrs. Smith was the owner of the land, and that her husband was not authorized to sell it. And for this purpose we care very little which of three views is taken of the question: whether Mrs. Smith is to be regarded as having ratified the contract made by her husband; whether she is to be estopped from denying its validity; or whether she is to be considered as having had no interest in the property. Our own inclination is to the latter view; but the others we think equally correct. It seems very clear to us, upon the facts disclosed, that Elbridge Smith was, as he represented himself, the real owner of the property, and that *Armstrong*, having bargained for it with no knowledge or information, constructive or otherwise, that the legal title was in Mrs. Smith, is entitled to be protected on this ground. And to the point that a married woman may be estopped

under circumstances like these, we call attention to the cases of *Gatling v. Rodman*, 6 Porter (Ind.) 289, and *Hartman v. Kendall*, 4 id. 403, cited in the brief of counsel for the defendants.

Some other minor points are presented in the case, not requiring especial notice. They were all correctly decided by the court below. Authority in writing from Mrs. Smith to her husband, assuming her to have been the real owner, was not necessary in order to authorize him to enter into the contract for the sale of the land (*Dodge v. Hopkins*, 14 Wis. 630); and hence a ratification in writing by her of the contract was not required. But if the contract is to be regarded as resting in parol, enough was done to take it out of the statute. The defendant *Armstrong* had taken possession under it, made some improvements, and paid part of the price; and he shows that he was always ready and willing, and had offered, to pay the residue. We think it would be inequitable, under the circumstances, to deny a specific performance; and the plaintiff having, in November, 1866, with constructive, if not actual, knowledge of the defendant's rights, taken title by conveyance from Mrs. Smith and her husband, was properly decreed to convey to the defendant on payment by the latter to him of the balance of the purchase-money due upon the contract, as offered by the answer.

*By the Court.* — Judgment affirmed.

PAINE, J., dissents.