· ABBOTT and another vs. JOHNSON, imp.

NOVATION OF CONTRACT. *(1) When breach of original contract immaterial.* *(2) Estoppel against original obligor.*

PRACTICE. *(3) Continuance: Waiver of objection.*

REVERSAL OF JUDGMENT. *(4) No reversal for error not prejudicial to appellant.*

COSTS. *(5-9) Costs at the circuit and in supreme court: Presumptions from record.*

1. Where A. gave his notes for a large part of the price of chattels purchased by him, and a mortgage of the same chattels to secure the notes, and, upon A.'s default in payment, B., to prevent a seizure of the chattels by the vendors, agreed with them and A. to give the vendors, and did give them, as the nominal purchaser of the chattels, his own notes and a real estate mortgage for the amount remaining unpaid upon A.'s notes: *Held*, in a suit against B. upon his notes, that the original contract of purchase by A. was superseded by this arrangement, and the question whether there was a warranty in the sale to A., and damage to A. from breach thereof, was immaterial.

2. *It seems*, also, that the use of the property by A. for nearly a year without claim of damages for breach of the alleged warranty, and his assent to the computation of the balance due upon his notes, and the security given therefor, would estop any claim of such damages herein.

3. A compliance with the terms upon which a continuance is granted, and an acceptance of the benefit of the continuance, are a *waiver* of any objection to such terms.

4. In foreclosure of a mortgage, so much of the judgment as provides for selling first that part of the premises which was not included in the mortgagor's homestead, appearing to be for his benefit only, error in admitting evidence taken by plaintiff *ex parte* to show that a part of the premises was homestead, and that the remainder could be sold separately without injury, is not ground of reversal.

5. In the absence of evidence to the contrary, it must be presumed that motions for which costs were taxed were "ordinary motions," and an allowance therefor, in the taxation of costs, of a greater sum than that prescribed by statute (sec. 41, ch. 133, R. S. 1858), is error.

6. No separate costs are allowed by the statute for copying *indorsements* of papers.
7. It must be presumed, in the absence of proof to the contrary, that an allowance by the circuit court for sheriff's fees for serving subpœnas was supported by the returns to subpœnas before the court.
8. An allowance for several days' attendance of witnesses who were *attorneys-at-law*, held not erroneous, where it does not appear that they were "counsel in the cause."
9. On affirming the judgment herein in other respects, but directing a deduction of about twelve dollars from the costs allowed, this court denies costs of this court to either party, but requires the appellant to pay the clerk's costs.

APPEAL from the Circuit Court for *Chippewa* County.

Action to foreclose a mortgage given by the defendant *Charles Johnson* to the plaintiffs to secure payment of his notes: one for $600, due December 1, 1875; one for $400, due December 1, 1876; one for $200, due December 1, 1877. *Charles Johnson* answered that the notes and mortgage were given to secure such sum as might be due the plaintiffs from one John C. Johnson under an agreement for the sale to the latter by plaintiffs of a steam separator of a certain described construction and character; that the contract of sale contained a warranty of the machinery by the plaintiffs, of a certain character; that at the time the notes in suit were made, the sum actually due plaintiffs from John C. Johnson under said contract was only $1,115, which plaintiffs well knew; that, by fraudulent representations on plaintiffs' part, defendant was induced to believe that the balance due was $1,200, and gave the notes and mortgage in suit relying upon those representations; that said notes and mortgage were given and accepted subject to all the conditions and warranties of the original agreement between plaintiffs and John C. Johnson; that the separator did not correspond in fact to the warranty, by reason whereof John C. Johnson had suffered damages in excess of the value of the machine; and that at the date of the defendant's notes and mortgage nothing was due from John C. John-

son to the plaintiffs for said machine; and that nothing was due them on defendant's notes and mortgage at the commence-- ment of this action. Prayer, for judgment that the notes and mortgage be given up to be cancelled, and that the complaint be dismissed, etc.

Certain questions of fact were submitted to a jury, who found, in response thereto, that John C. Johnson made with the plaintiffs the agreement alleged in the answer; that plaint- iffs, at the time of the sale of the said machine, "warranted the same to the said John C. Johnson;" that the machine did not correspond to the warranty; and that at the date of the notes and mortgage in suit John C. Johnson had been injured by the breach of warranty, in the sum of $489. Afterwards "plaintiffs, *ex parte*, without any notice, put in evidence the affidavit" of one of their attorneys that a part of the premises in question constituted defendant's homestead, and that the remaining part could be sold separately without injury to the parties. The judge subsequently found as facts, among other things, that John C. Johnson was damaged in the sum of $98.60 by breach of plaintiffs' warranty of the machine; that plaintiffs took the machine from John C. Johnson and sold it to *Charles Johnson* for $1,200, "being the amount due from John C. Johnson, with expenses," and *Charles Johnson* in payment therefor gave them the notes and mortgage in suit; that said notes and mortgage were not given subject to any warranty made to John C. Johnson or to any agreement made with him; that a part of the mortgaged premises constituted defendant's homestead, and the remainder could be sold sepa- rately without injury to the parties; that certain specified amounts were due and to become due on the notes; and that there was also due on the mortgage $50 for solicitor's fees. Judgment was rendered accordingly; from which *Charles Johnson* appealed.

The questions raised on the taxation of costs will sufficiently appear from the opinion.

For the appellant, there was a brief by *Meggett & Teall*, his attorneys, and *J. S. Carr*, of counsel, and oral argument by *Mr. Meggett*.

For the respondents, there was a brief by *Wheeler & Marshall*, and oral argument by *Mr. Wheeler*.

ORTON, J.    We think it sufficiently appears from the evidence, that in August, 1874, John C. Johnson purchased of respondents certain steam machinery, for the sum of $1,709.20, paid a small part of it, and gave his notes for the balance, to become due in the months of November and December, 1874 and 1875, and in the months of January and November, 1876; and, to secure the same, executed to the respondents a chattel mortgage upon the whole or part of the machinery sold, and a mortgage upon certain real estate which he claimed to own. In the month of July, 1875, after the said John C. Johnson had made use of the machinery nearly a year, and had paid only a small part of the amount so secured, and was in default of payments past due, and the respondents had ascertained that the said Johnson had no title to the lands mortgaged, they threatened, and took some steps, to take the machinery upon the chattel mortgage, and on the ground that it had been obtained by false pretenses.

To prevent the respondents from so doing, it was arranged between the said John C. Johnson, his brother *Charles Johnson*, the appellant, and the respondents, in effect that the balance unpaid upon the notes so given by John C. Johnson should be computed and ascertained, and that the said *Charles Johnson*, the appellant, should give his notes and mortgage to the respondents therefor, as the nominal purchaser of the machinery, for such amount.    This arrangement was carried into effect, by the computation of said amount at the sum of $1,200, in the presence and with the knowledge and assent of John C. and *Charles Johnson* and the respondents, and such amount fully agreed upon; and by the said *Charles Johnson*,

the appellant, giving to the respondents the notes and mortgage upon which this suit is brought.

In this view of the evidence, it is immaterial whether there was a warranty of the machinery in the first contract of purchase, or any damage to John C. Johnson from the breach thereof, or not; for that contract of purchase was wholly superseded, if not rescinded, by such subsequent arrangement between the parties. But, if it were important to inquire as to the existence or breach of any such warranty, or as to the damages resulting therefrom to John C. Johnson, in defense of this action, his use of the machinery for nearly a year, without claiming or insisting upon any such damages, and his assent to the computation of the balance due and the security given therefor, would be a full waiver and estoppel of such damages. *Smith v. Armstrong et al.*, 24 Wis., 446; *Webster v. Phœnix Ins. Co.*, 36 Wis., 67; *Gans v. St. Paul F. & M. Ins. Co.*, 43 Wis., 108; *Locke v. Williamson et al.*, 40 Wis., 377; *Morehouse et al. v. Comstock*, 42 Wis., 626.

The findings of fact by the circuit court appear to be sustained by a clear preponderance of the evidence, and the conclusions of law thereon are correct, and warrant the judgment, if the rulings upon other matters are not erroneous; and these we will briefly consider in their order:

1. The exception to that part of the order of continuance at a previous term, making the terms of such continuance the payment of forty dollars by the appellant as the expenses of obtaining the attendance of a witness outside of the state, must be held to have been waived by its payment, and by receiving the benefit of the continuance granted upon such terms. *Damp v. Town of Dane*, 33 Wis., 430.

2. The taking of *ex parte* evidence by the respondents in respect to a part of the mortgaged premises, being the homestead of the appellant, and as to the situation of the remainder, with the view to so frame the judgment as to have such remainder first sold, would seem to be favorable *only* to the

appellant, by giving him the advantages of a homestead exemption; and the injury to him by such procedure is not perceived.

3. The allowance of the fifty dollars solicitor's fee named in the mortgage was not only lawful, but a proper exercise of judicial discretion. *Pierce v. Kneeland*, 16 Wis., 672.

4. The errors complained of in the taxation of the costs are mostly very indefinite, and by no means clear from the evidence furnished by the record.

The investigation and analysis of the items of a taxed bill of costs, with the *minute* and technical knowledge of the subject so necessary and indispensable to make each item the subject of legal certainty and exact justice, impose upon this court a very difficult and vexatious duty in any case, and it is encouraging to know that such duty is not often imposed. We shall, however, endeavor to consider the several objections made with such care as their importance demands.

The item for arguing two motions, taxed at six dollars, was clearly erroneous. In the absence of any proof to the contrary, these motions must be presumed to have been such as are mentioned in section 41, ch. 133, R. S. 1858, as "ordinary motions," the taxable costs for which are sixty-two and a half cents each.

The items of drafting and copying eleven *indorsements* of papers, taxed at four dollars and sixty-seven cents, are not specifically allowed by any statute; and we are not inclined to *force* a construction of any statute to sanction such a petty exaction.

The item for an abstract, taxed at five dollars, was not shown by any proof to be a fair charge; but we think it was shown by the affidavit of the appellant to have been excessive, and that the proper charge therefor should have been only two dollars and forty-five cents.

The items of sheriff's fees for serving subpœnas were not shown by any proof to have been improper, and it must be

Union Lumb'g Co. vs. The B'd of Sup'rs of Chippewa County and others.

presumed that the returns of the subpœnas were before the circuit court, showing the amount of such fees.

The costs for witness fees, as taxed, were proved by the affidavit of the attorney of the respondents, and were not shown to be improper by any counter-proof, or to have been included in any former bill of costs paid, and were correctly taxed as to all of the witnesses, unless the charges for several days' attendance of some of the witnesses, who were attorneys-at-law, were improper. The attorneys who were such witnesses were not shown to have been "counsel in the cause," and therefore they did not come within the exception of the statute; and the fact that they were in attendance upon the court in other business would not prevent them from receiving the fees of other witnesses, within the principle established in the case of *McHugh v. C. & N. W. R'y Co.*, 41 Wis., 79. The total excess of such taxed bill over the legal and proper costs is the sum of eleven dollars and ninety-seven cents ($11.97), which should be deducted from the costs in the judgment.

*By the Court.*—The judgment of the circuit court is affirmed except as to the costs therein, and as to such costs it is reversed, with directions to modify the same by deducting therefrom the sum of eleven dollars and ninety-seven cents. Neither party will recover any costs in this court, but the appellant will pay the costs of the clerk.