Fairbanks, Morse & Co. v. Baskett.

---

FAIRBANKS, MORSE & CO., Appellant, v. CECIL M. BASKETT, Respondent.

98　53
100　⁶208

St. Louis Court of Appeals, February 3, 1903.

1. **Sale: WARRANTY OF QUALITY: BREACH OF WARRANTY: NOTE.** Where the purchaser of an engine , sold with warranty of quality, after receiving the machine, gave notes to the seller as required by the contract, the giving of such notes did not debar him from redress for a breach of warranty.

2. ————: ————: ACCEPTANCE AND RETURN OF ARTICLE SOLD: REMEDY: PRACTICE, TRIAL. Acceptance and use of an article sold with warranty do not prevent the vendee from recovering on the warranty if he makes timely objection.

3. ————: ————: TITLE IN VENDOR: EFFECT OF: CHATTEL MORTGAGE. The retention of title by the seller of a chattel until paid for is legal, and in effect a chattel mortgage.

4. ———: ———: ACKNOWLEDGMENT AND RECORDING OF CONTRACT: STATUTORY CONSTRUCTION: LOSS OF SECURITY: RISK OF VENDOR: SUBSEQUENT SALE OF CHATTEL BY VENDEE: EFFECT OF. Where the vendor of a chattel retains title until it is paid for, and does not require the agreement to be acknowledged and recorded as required by section 3412, Revised Statutes 1899, in order to render such agreement valid as against third parties, the vendor takes the risk of loss of benefit of security by any subsequent sale.

5. ———: ———: CHATTEL MORTGAGE: RIGHT OF VENDEE: ESTOPPEL. Where the vendee of a machine sold with warranty, title to which is retained by the vendor until full payment, gives a chattel mortgage thereon to a third person, such act does not estop him from relying on a breach of warranty when sued for the purchase price.

6. ———: ———: EXTENSION OF TIME OF PAYMENT: EFFECT OF: WAIVER: CONSIDERATION: BREACH OF WARRANTY. Where a machine is sold with warranty and the purchaser secures extension of the time of payment, such extensions are a sufficient consideration for a waiver on the part of the vendee of any breach of warranty.

7. ———: ———: SALE WITH WARRANTY: EXTENSION OF TIME OF PAYMENT: EFFECT OF: ESTOPPEL: SUIT FOR PURCHASE PRICE: DEFENSE: VENDEE, RIGHTS OF WHEN SUED FOR PRICE. Where a machine is sold with warranty, the securing by the vendee of an extension of time of payment does not estop him to set up a breach of the warranty in an action for the price.

8. ———: ———: ———: ———: When a chattel is sold with warranty, breach of the same may be set up by the purchaser in an action for the price, notwithstanding there was an extension of payment by the renewal, or otherwise, unless an intention to waive the breach is shown.

9. Intend to Waive Breach of Warranty: JURY QUESTION: EXTENSION IN TIME OF PAYMENT. Where a machine is sold with warranty, and subsequently the purchaser obtains extensions of the time of payment, the question whether there was any intention to waive a breach of warranty is for the jury.

10. ———: EXECUTORY SALE: PROMISE TO PAY: WAIVER OF BREACH OF WARRANTY: INTENT. In as much as in executory sales a warranty survives acceptance and survives full payment, promises of the purchaser to pay will not amount to a waiver of any breach of warranty unless they are made with that intention.

11. ———: ———: ———: ———: ———. And the question whether such intention exists is one for the jury.

Fairbanks, Morse & Co. v. Baskett.

12. ———: ———: VENDER: VENDEE: FRAUD: PLEADING AND PRACTICE: DEFENSE. Though the maker of a machine sells at the price of a new one, and delivers a disguised second-hand one, in an action for the price the defense of fraud can not be made unless pleaded.

13. ———: ———: ———: IMPLIED WARRANTY. Where the vendor of a gasoline engine delivered an engine of the kind and character agreed on, there was no implied warranty that it should be fit for the purposes for which the vendee intended to use it.

14. ———: ———: ACTION FOR PRICE: WARRANTY: TESTIMONY: INSTRUCTION: ERROR. Where, in an action for the price of an engine, the defense was a breach of quality, but defendant himself testified that it was worth a certain amount, it was error to instruct that if the engine was wholly worthless, plaintiff could not recover.

15. ———: ———: ———: ———. Where the vendor of an engine agreed to furnish certain parts if it should prove defective in material or workmanship within a year, in an action for the price, the defense being a breach of warranty, the jury should have been instructed that plaintiff did not agree to make good natural wear of the machine.

16. Action: EVIDENCE: AGENCY: ADMISSION: PREJUDICIAL ERROR: PRACTICE, TRIAL. In an action for the price of an engine, the defense being a breach of warranty, there was offered in evidence, ostensibly for the purpose of proving that a certain person was plaintiff's agent, an advertisement in the nature of a "puff" for plaintiff's engine: *Held*, that, the fact of agency having been admitted, the advertisement was incompetent, and might have been prejudicial.

Appeal from Audrain Circuit Court.—*Hon. Elliott M. Hughes*, Judge.

REVERSED AND REMANDED.

*C. A. Barnes* for appellant.

(1) The alleged counterclaim of defendant in his answer and in his amended answer does not state a cause of action, and is not sufficiently definite to advise plaintiff of the nature of his claim and bar another action. R. S. 1899, sec. 3852; Pattison v. Lutz, 1 Mo. App. 133; Nutter v. Houston, 32 Mo. App. 451; Ros-

enburg v. Boyd, 14 Mo. App. 429. (2) Plaintiff's refused instruction No. 18 should have been given, because the court of its own motion gave the instructions as prayed for regarding the first and third counts of plaintiff's petition, and because regarding the second count, defendant never demanded of plaintiff the parts ordered to replace defective parts of said engine, but ordered them as repairs, and defendant was not entitled to recover upon its counterclaim because it did not state a cause of action, save the sum of five dollars as admitted due plaintiff, because it was necessary under the contract of sale to make demand of plaintiff to replace defective parts. Kirk & Co., v. Seely, 63 Mo. App. 262, and cases therein cited; Kingman v. Schulenberger, 64 Mo. App. 548; Nichols v. Larkin, 79 Mo. 265. (3) The court committed error in overruling plaintiff's motion to require defendant to make his amended answer definite and certain, because defendant having asked leave of the court to file an amended answer herein, thereby made himself amenable to the rules of practice of said court in relation to his pleading. Swineford v. Pomeroy, 16 Wis. 553; Burnham v. Turner, 14 Wis. 622; Briggs v. Railroad, 111 Mo. 168.

*John T. Baker* and *W. W. Fry* for respondent.

(1) The allegations in defendant's answer and counterclaim are sufficient. The well-known rule in this State is that a statement of a cause of action in an action before a justice of the peace is always held sufficient when it identifies the ground of the action with such certainty as to apprise the defendant of what the plaintiff claims of him. Lee v. Tel. Co. 51 Mo. App. 375; Butts v. Phelps, 90 Mo. 670; Glenn v. Weary, 66 Mo. App. 75; Force v. Squire, 133 Mo. 306. (2) Plaintiff's instructions Nos. 11 and 13 were properly refused. There was no evidence to support said in-

structions. They do not correctly declare the law. By the words of the contract the engine was warranted "to be made of good material and in a workmanlike manner." The engine was sold for a particular purpose, known to plaintiff, and to do certain work and thereby there was an implied warranty that it was reasonably fit for the use intended. If not so fit the vendee had the right to return it, thereby rescinding the sale or keep the same and defeat recovery of the purchase price to the extent of the difference between the value if it had been as contracted for and the real value in its inferior condition. If it is worthless for any other purpose there is a total failure of the consideration. St. Louis Brewing Co. v. McEnroe, 80 Mo. App. 429; Schoenberg v. Laker, 88 Mo. App. 387; June & Co. v. Falkinberg, 89 Mo. App. 571. (3) "In ordinary cases of breach of warranty, both contracts remain binding to their full extent, and when recoupment is allowed, damage for breach on one side and set off by like damage on the other side, the cross-claims arising out of the same transaction compensate one another and the balance only is recovered. Brown v. Weldon, 27 Mo. App. 252; St. Louis Brewing Co. v. McEnroe, 80 Mo. App. 429; Schoenberg v. Laker, 88 Mo. App. 387.

GOODE, J.—On October 3, 1900, defendant purchased a gasoline engine of the plaintiff (a corporation) to be used in running machinery in his printing office in the city of Mexico, Missouri. The contract of sale was in writing and contained an express warranty that the article should be a gasoline engine of two and one-half horsepower; also a warranty that the engine was made of good material and in a workmanlike manner. If any part proved defective in material or workmanship within one year from the date of shipment, there was a stipulation binding the plaintiff to replace it free of cost. The memorandum re-

cited that it was the only agreement between the parties and that there were no verbal understandings. In addition to the terms stated there was one that the title to the engine should remain in plaintiff until paid for in full and that plaintiff might, in case of default, seize and sell it, by publishing notices, and apply the proceeds to pay the balance due on the contract.

Baskett made a cash payment of fifty dollars and after he had received the engine and used it about two months, executed two notes for the balance of the price, one for $70, due January 2, 1901; the other for $71.50, due March 1, 1901, both in the ordinary form of promissory notes. He paid twenty-five dollars on the first note at a subsequent date and published an advertisement for plaintiff in his newspaper for which he was entitled to a credit of five dollars. Defendant ordered from the plaintiff new parts to replace some which either gave way from wear or were originally defective, and plaintiff also sent a man to fix the engine at defendant's request. A portion of the expense of these matters was paid by the defendant in cash, but plaintiff claims a balance due on account for the labor and repairs.

This action was brought on said notes and on that account, there being three counts in the petition, one for each note and one on the account.

The answer of the defendant admits the execution of the notes and receipt of the merchandise charged in the account and pleads that the notes were executed and delivered without a consideration; further, that they were given under the aforesaid contract for the purchase price of the engine, and that the plaintiff in said contract agreed to furnish a certain kind of engine and comply with certain warranties in said contract contained and *also with other warranties;* that the engine furnished was not the kind agreed nor did it comply with the warranties made by the plaintiff, of all which facts plaintiff had been notified by the defend-

ant on various occasions and the return of the engine tendered, but plaintiff refused to accept it. The answer further states that the articles of replacement and repair were furnished under the contract, and defendant was not liable for them because they were to be furnished by the plaintiff free of cost. Besides said defenses, the answer pleaded a counterclaim in which the defendant asked to recover what he had paid on the engine, to-wit, $75, and what he had expended for repairs, to-wit, $20; also the five dollars for advertising.

The replication, after stating there was a good consideration for the notes and denying the allegations of the answer, pleads that defendant waived all claim for damages on account of the defects in the engine by accepting it, making payments on the price, executing the notes in suit for the balance of the purchase price, using the engine for more than a year, making numerous promises to pay the notes, and ordering repairs without demanding that they be furnished by the plaintiff to supply defective parts, and by mortgaging the engine. These acts, the replication charges estopped the defendant from asserting a failure of consideration or damages for breach of warranty. The replication further charges that any inefficiency in the engine was due to careless handling by the defendant.

There was testimony that the engine was found to be defective as soon as it was set up in defendant's printing office; also that it was not worth over twenty-five dollars and was useless in a printing establishment. According to defendant's witnesses, there were blisters on the paint indicating that it was a secondhand engine; its movements were erratic; its explosions irregular; the flywheels on it were cracked so that both of them afterwards broke; it "knocked" loudly when running so as to be heard a block or more away; the igniter (that is the appliance to send a spark through the gasoline vapor and thereby produce the explosions

which caused the engine to operate) was secondhand and inefficient; the engine often stopped during the day, could not be depended upon, its irregular movements injured the other machinery in the office, broke up the type, made the newspapers come out of the presses uneven and smudged, made the folder tear the papers as they went through and altogether caused the printing establishment to turn out bad work. The defendant notified plaintiff of the defects, and his agent called on the plaintiff and asked that the engine be made to run well. There was also testimony that defendant offered to return the engine, but the circuit court held the offer was made too late.

On the other hand, there was evidence to show the engine was new and that the few blisters on it were produced by its having been tested in the factory before it was shipped; that the motion of all gasoline engines is somewhat irregular, but that efficient service by them does not require a regular motion, that whatever imperfection there was in the work of this particular engine was due to its being set on a foundation not sufficiently staunch and solid (the defendant was bound by the agreement to prepare the foundation) and to its being handled improperly and badly cared for.

An extensive correspondence ranging over nearly a year took place between the parties in regard to the payment of the balance due on the notes. In this correspondence the defendant occasionally mentioned the defects in the engine but not in the way of making claim for damages. The letters were chiefly demands for payment by the plaintiff and excuses offered by the defendant of different kinds for not paying; such as illness and short collections on account of the drouth. In two letters defendant promised to make a remittance by a certain date if indulgence was granted to that date and on those promises extensions were given. Plaintiff several times threatened to sue on the notes

but was induced to forbear by defendant's acknowledgments, excuses and promises. One Keath, plaintiff's agent, called on Baskett and demanded payment of the notes which Baskett agreed to make but failed to do so, alleging as a reason for his failure disappointment in collections.

Such was the substance of the correspondence until October thirty-first when Baskett wrote a long letter saying he intended to fix the matter up satisfactorily and there was no necessity for a lawsuit. He complained of the engine and the cost of repairs, also mentioned his bill for advertising and said the best way to settle all differences was to call the indebtedness outside the two notes square, offering to pay one hundred dollars in full settlement of the two notes, the amount of which the plaintiff's attorney figured to be $123. No settlement was made but this action was instituted.

It should be stated that the defendant testified he had given a mortgage on all the machinery in his office, including the engine, to his mother.

Exceptions were saved by the plaintiff to adverse rulings on instructions, which rulings will be noticed below as far as seems necessary.

The jury returned a verdict for the plaintiff on the first count of its petition for $75.43, and on the second count for $47.92; for the defendant on the third count of the petition, and they further found for the defendant on his counterclaim in the sum of $160. Thereupon judgment was entered by the court in favor of the defendant and against the plaintiff for $37.50.

From this judgment an appeal was prosecuted.

Plaintiff insists that its plea of waiver or estoppel against the defendant's right to claim damages for breach of warranty was made good by the evidence and that the court should have instructed the jury to return a verdict in its favor on the notes. Several in-

structions were requested on this theory; none of them conditional but all peremptory.

There were three grounds relied on to raise a waiver or estoppel: First, the retention of the engine and the execution of the notes for the unpaid purchase price after defendant knew of its defects; second, giving the mortgage on the engine in derogation of plaintiff's title and right to seize and sell for default in payment; third, defendant's reiterated promises for more than a year to pay in full, whereby he obtained indulgence from the plaintiff and extensions of the notes.

That defendant waived the right to insist on damages for a broken warranty by retaining the engine and executing the notes after he was aware of its imperfections, is an untenable position. The execution of the notes was simply a compliance by defendant with his contract, which required him to give them for the balance unpaid, and no more debarred him from redress for a breach of warranty than paying the price in cash would have done. Acceptance and retention of an article sold with a warranty do not prevent the buyer from recovering any damage he may sustain on account of the article falling short of the warranty, at least if he makes timely objection. Lamar v. Water Co., 140 Mo. 145. And the damage may be recovered either by an abatement from the agreed price when the buyer is sued or by an action if he has already paid in full. Brown v. Weldon, 27 Mo. App. (St. L.) 251; Branson v. Turner, 77 Mo. 489; Long v. Armsby Co., 43 Mo. App. (K. C.) 253; Boyer v. Neel, 50 Mo. App. (St. L.) 26. In the language of the books, the warranty survives the acceptance; and this rule is reasonable; for the purpose of a warranty is to make the purchaser whole if the article sold turns out after delivery to be of inferior merit.

An owner of personal property may place what reasonable conditions he will on its sale and transfer

and they will be valid as between him and a buyer; so
the retention of the title to the engine until it was paid
for. was legal and, we think, was in effect a chattel
mortgage. Wedertz v. Bader, 12 Mo. App. (St. L.)
575; Oester v. Sitlington, 115 Mo. 247. Whether a
conditional sale or mortgage, as the plaintiff did not
require the agreement to be acknowledged and recorded
it took the risk of losing the benefit of the security by
a subsequent sale or incumbrance. R. S. 1899, sec.
3412. The mortgage to the defendant's mother was
not put in evidence and may have been given in recog-
nition of plaintiff's lien or in circumstances which
would make it subordinate. Be that as it may, it is
hard to see how it can work an estoppel against the
defendant, because, if defendant has a just demand
against plaintiff on the contract by way of counter-
claim or set-off, plaintiff is no more injured by the
mortgage than if defendant was making no claim but
was conceding plaintiff's entire demand; in fact is
less so. The doctrine that acceptance and use of a
chattel does not preclude a purchaser from recovering
for breach of warranty is inconsistent with the notion
that incumbering the chattel raises an estoppel against
such a recovery.

Waiver, as will be pointed out below, depends on
intention, in so far as it is a distinct doctrine of the
law not shading into estoppel; and the mortgage of a
guaranteed article by a buyer after he has full knowl-
edge of its deficiencies is unquestionably such a use
of the article as will support a finding that the buyer
chose to overlook its faults and not claim compensa-
tion therefor; but it does not require that finding.
The fact is one to be weighed by the jury in determin-
ing whether or not the buyer did waive any claim.
against the guarantor.

What was the effect of Baskett's promises to pay
the notes and the two .or more extensions of time for
payment which were granted to him by the plaintiff on

the faith of his promises? Did he thereby so utterly
lose the right to ask compensation for breach of the
contract that the trial court should have peremptorily
instructed the jury to disallow his demand; or were
those facts to be weighed by the jury on the issue of
whether defendant had waived or become estopped to
assert his demand?

A distinction is drawn between waiver and estop-
pel when the two doctrines are discussed in their
purely technical aspects. Waiver involves the notion
of an intention entertained by the holder of some right
to abandon or relinquish instead of insisting on the
right. West v. Platt, 127 Mass. 367; Stiepel v. Life
Assn., 55 Mo. App. (K. C.) 224; Lee v. Haskett, 39
Id. 67; Erlich v. Insurance Co., 88 Mo. 249. An equit-
able estoppel arises when the purpose or natural con-
sequence of a person's representations or conduct is to
induce another person to do or to omit some act, the
doing or omission of which would turn out to his det-
riment and to the inducing party's benefit, if the lat-
ter were permitted to take advantage of it; and such
an estoppel more often carries the implication of
fraud than waiver does. Bates v. Perry, 51 Mo. 449;
St. Louis v. Lumber Co., 98 Id. 613; Galbreath v. New-
ton, 30 Mo. App. (K. C.) 380. Waiver depends on
what one intended to do himself; estoppel rather on
what he caused his adversary to do. There may be a
valid waiver of rights of a certain kind (that is, for-
mal as distinguished from substantial rights) without
a consideration, showing that waiver differs from con-
tract. A landlord may waive the forfeiture of a term
for non-payment of rent, the maker of a note may
waive demand and notice of protest, a party may
waive the statute of limitations or of frauds, without
consideration. But where substantial rights are in-
volved, we apprehend that a waiver must be supported
by a consideration to be valid. Haseltine v. Ausher-
man, 87 Mo. 410; Fulkerson v. Lynn, 69 Mo. App. (K.
C.) 649.

The subject-matter of this controversy is of such a nature that we think a consideration would be necessary to support the alleged waiver by the defendant; but consideration enough may be found in the extensions of the time of payment by the plaintiff. True, those extensions were not made for a consideration and hence were not binding on the plaintiff; but they were granted in good faith and acted upon and would uphold an agreement express or implied on the part of the defendant to relinquish any claim for damages. Murdock v. Lewis, 26 Mo. App. (St. L.) 234; Napa Valley Wine Co. v. Rinehart, 42 Mo. App. (K. C.) 171.

A right or claim may be waived by agreement of the parties interested, or by an implied agreement raised by law against a party on account of his words or conduct, or on the principle of estoppel; that is, where the acts and conduct were such as to cause another party to act in a way that could be taken advantage of to his detriment. Bishop on Contracts, sec. 791. In many instances, waiver and estoppel are practically undistinguishable; and when a person's behavior is such as to exclude him from afterwards availing himself of a fact or asserting a demand, it matters little whether he intentionally relinquished his right or debarred himself unintentionally, or whether, in legal nomenclature, the doctrine invoked against him is denominated waiver or estoppel. We will consider the applicability of each of the three above-mentioned forms of waiver to the facts of this case.

No express agreement was ever made to waive the defendant's claim for breach of warranty, as the subject was not mentioned in the correspondence of the parties. We fail to see how the defendant's promises to pay the notes could raise an estoppel against him because, so far as was shown, those promises caused no detrimental change in plaintiff's position; for, as said, the extensions granted did not prevent it from proceeding to collect the notes at any

time.  Garnier v. Papin, 30 Mo. 243; Arend v. Smith, 151 N. Y. 502; Insurance Co. v. Houck, 71 Mo. 465.

The question left, then, is, did defendant when he promised to pay the notes impliedly agree to waive any claim for damages on account of defects in the engine? That the renewal or extension of a promissory note at the solicitation of the maker, when he had full knowledge of a breach of warranty in respect to an article for which the note was given, constitutes a waiver of any defense on that score, strikes us as a proposition of some difficulty on principle.  But the cases, with few exceptions, hold that failure of consideration or breach of warranty may be maintained notwithstanding there was an extension of payment by renewal or otherwise, unless an intention to waive the failure or breach is proven.  Wheelock v. Berkeley, 138 Ill. 153; Cantrall v. Fawcett, 2 Ill. App. 569; Hoxie v. Ins. Co., 32 Conn. 21; Insurance Co. v. Whitney, 1 Metclf. 21; Hooker v. Hubbard, 102 Mass. 239; Hill v. Buckminster, 5 Pick. 391; Geiger v. Cook, 3 Watts & S. 266; see, also, 1 Randolph, Commercial Paper (2 Ed.), 538; 1 Parsons, Bills and Notes, sec. 178.  Opposed to this view, are the Wisconsin decisions (see Abbott v. Johnson, 47 Wis. 239, and citations), Thweatt v. McLeod, 56 Ala. 375; Dawson v. Keaton, 3 Smale & G. 186, and some other cases.

In Wheelock v. Berkeley, the action was on two promissory notes and the defense was that those notes were made in renewal of prior notes between the same parties for the purchase price of a horse warranted to be sound, which warranty was broken and the purchaser damaged more than the amount due on the notes. It was contended that, inasmuch as the renewal notes were given with full knowledge of the horse's condition, the defense of breach of warranty was waived, as to which defense the Supreme Court of Illinois said:

"The giving of a note, unexplained, is not conclusive evidence of a settlement of all the demands be-

tween the parties to such an instrument, but the question of the intent of the parties, in such case, is one of fact, to be determined by the jury from all the evidence relating to the transaction.   Ankeny v. Pierce, Breese (Beecher's Ed.), 289; Crabtree v. Rowand, 33 Ill. 421.''

In Cantrall v. Fawcett, the defense was that the note sued on was a renewal of one given for the price of a warranted corn sheller, the defendant offering to show a breach of warranty, which he was not permitted to do and, as to that ruling, the appellate court said:

''The contract of warranty, if there was one, might remain even were the note paid off, and suit might afterwards be brought for the breach of it.   True, it might have been settled and adjusted when the new note was given, but not so unless the parties so intended.   The fact of giving the new note might be taken into account by the jury, together with all the other evidence in the case, in determining whether in fact there was a settlement of all differences, but it should not be held to be a conclusive fact.   It was the province of the jury to weigh and determine from all the evidence whether a full settlement had been made. And it was the duty of the court to admit all the evidence bearing on that question.   It was not the province of the court to determine whether a settlement had been proven.   It was error in the court to exclude the evidence on the question of damages, for the jury might have found that the warranty and breach had been fully established, and that no settlement had been made between the parties.   In that case the question of damages would have been a vital one.''

The other cases cited are to the same effect.

As said above, waiver is a question of intention and is to be found as a fact by the jury from evidence tending to prove the intention to waive instead of being declared by the court, unless the evidence shows the intention so conclusively as to make the inference of waiver inevitable.   Ehrlich v. Insurance Co., 88 Mo.

249; Jordan v. Moulding Co., 77 Mo. App. (St. L.) 572; Hamilton v. Railroad, 80 Mo. App. (St. L.) 597.

There was unquestionably evidence in this case strongly tending to prove the defendant agreed to pay his notes in full with knowledge of all the matters which he afterwards set up as a defense to them; but this evidence was for the jury to weigh, both on the issue of whether the engine complied with the warranty and the other issue of whether, if it did not, the defendant relinquished a claim for damages because of the breach. Inasmuch as a warranty survives acceptance in executory sales, and also survives full payment of the price, subsequent promises to pay in full can not well be held to waive a breach of warranty unless made with that intention. Fairbanks v. De-Lissa, 36 Mo. App. (K. C.) 711; McManus v. Watkins, 55 Id. 92.

We hold, therefore, that the plaintiff was not entitled to a peremptory instruction for a verdict on the notes, but is entitled to have the defenses of waiver and estoppel submitted to the jury upon all the evidence tending to establish them.

Much testimony was introduced to show portions of the engine were secondhand instead of new. The letters of the defendant prove he attached no importance to its containing secondhand parts, except in so far as such parts were inferior in material and workmanship and constituted a breach of warranty. In other words, he cared nothing about the mere fact that certain parts were secondhand, if the engine was as good as it would have been if entirely new.

We say unhesitatingly that if a manufacturer sells a machine for the full price of a new one and delivers a disguised secondhand one, he commits a fraud on the purchaser, for secondhand goods are commonly of much less value than new. A defense of this kind, however, is one of fraud rather than of warranty, unless there is a warranty that the machine shall be new. (Hu-

ber Mfg. Co. v. Hunter, 87 Mo. App. [St. L.] 50; Id. 8352, decided Dec. 23, 1902), and the defense of fraud was not interposed.

Defendant was permitted to prove the engine was purchased to run the machinery of a newspaper and job printing office, and was a failure for that work, on the theory that the law raised an implied warranty that it should be fit for the purpose for which it was sold. Said evidence was objected to but not withdrawn from the consideration of the jury, although the trial court did not adopt the theory on which it was admitted in submitting the case. But considering the course the trial took, the evidence, if incompetent, may have had a most prejudicial effect on the jury by leaving the impression on their minds that the plaintiff was responsible if the engine was unsuitable for running printing machinery. In fact, most of the testimony was directed towards proving its unsuitableness for that use.

The law is that where there are express warranties in a contract, implied warranties are excluded if it is apparent those expressed were intended to embrace all the obligations assumed by the warrantor; or, as is sometimes said in reference to this class of agreements, if a person chooses to rely on terms made by himself instead of the implications of the law, the law leaves him to the relief the agreed terms afford him. International Pavement Co. v. Machine Co., 17 Mo. App. (St. L.) 264; Boyer v. Neel, supra; Case Plow Works v. Niles, 90 Wis. 590; Berthold v. Mfg. Co., 89 Iowa 506; Wisconsin Brick Co. v. Hood, 54 Minn. 545; DeWitt v. Berry, 134 U. S. 306; Carleton v. Lombard, 25 N. Y. Supp. 570.

The engine was of the kind sold and agreed to be delivered, to-wit, a gasoline engine of two and one-half horsepower; the defendant himself swore it could be forced above that power. If a purchaser gets the thing he ordered there is no implied warranty

that it is fit for its intended uses. In such instances, the seller complies with his contract when he sends an article of the description bought and is not bound to see that it is adapted to do the buyer's work. Milwaukee Boiler Co. v. Duncan, 87 Wis. 120; Case Plow Works v. Niles, supra; Chanter v. Hopkins, 4 Mees & W. 399; Jones v. Just, L. R. 3 Q. B. 197; Gould v. Brophy, 42 Minn. 109; Seitz v. Brewers R. N. Co., 141 U. S. 518; Demming v. Foster, 42 N. H. 165.

The rule is otherwise when the seller or manufacturer contracts to make and furnish an article to do a certain work; for then he impliedly warrants the article furnished pursuant to the contract to be reasonably adapted to the use intended. The ground of the distinction is that in the first class of contracts the buyer himself selects the article; whereas, in the second class he relies on the seller to furnish one for a stated purpose and the seller is presumed to take the responsibility of selection.

To hold the plaintiff impliedly guaranteed the engine in question should be suitable for running the machinery of defendant's printing office would be to interpolate a new term into an agreement expressed by a memorandum which purports to contain all the agreed terms. Hence, the above-mentioned evidence was erroneously admitted, and on a retrial of the case both the evidence and the instructions should be rigidly confined to the question of whether any warranty contained in the contract was broken; and the warranties therein were, in substance, that the engine should be a gasoline one of the stated horsepower and of good material and workmanship. Its power is not disputed, so unless it was of bad material or workmanship, in some or all its parts, there was no breach of warranty.

The jury were told in an instruction that if the engine was wholly worthless the plaintiff could not recover, a theory of defense completely refuted by the

evidence. The defendant himself swore it was worth, as received, twenty-five dollars and he has certainly used it with more or less benefit. No such issue should have been left to the jury, for it was opposed to the entire testimony.

The plaintiff's right to recover for the new articles and the labor done on the engine after its delivery, turns on whether said articles and labor were rendered necessary by reason of the defective material and workmanship of the engine or were simply needed for repairs on account of its being impaired by use or bad management. Plaintiff agreed to furnish new parts if the engine should prove defective in material or workmanship within one year from the date of shipment, but did not agree to make good the natural wear of the engine. The jury should be instructed accordingly.

The advertisement in the nature of a puff for plaintiff's engine which was carried in defendant's newspaper, was incompetent as evidence. It was offered ostensibly for the purpose of proving that Keath was the agent of the plaintiff. That fact, however, was admitted by the plaintiff at the trial and the advertisement was wholly incompetent and may have been quite prejudicial.

The judgment is reversed and the cause remanded to be retried in conformity to the foregoing opinion. *Bland, P. J.,* and *Reyburn, J.,* concur.