Murmann v. Wissler.

---

MURMANN et al., Respondents, v. WISSLER, Appellant.

St. Louis Court of Appeals, January 16, 1906.

1. SALES: Waiver of Time for Delivery. Where there is a contract for the manufacture and delivery of machinery or appliances at a stipulated time, the acceptance by the purchaser of the goods or machinery, after the expiration of the time is only prima facie evidence of a waiver of the time.

2. ————: ————: Jury Question. The defendant made a contract with the plaintiff whereby the defendant was to manufacture and deliver to the plaintiff a number of automatic slot machine boxes by a given time, so that plaintiff could install them in certain theatres. Plaintiff paid defendant a greater part of the contract price in advance, and the defendant manufactured and delivered a portion of the boxes after the time specified but never did manufacture all that the contract called for. Those which were delivered were not satisfactory and the plaintiff could not procure the boxes elsewhere but was obliged to take such as the defendant delivered in order to keep his contract with the theatre companies; *held* in an action by the plaintiff for the loss of profits which would have accrued to him had proper boxes been furnished in the time agreed upon, whether the plaintiff waived the stipulation as to the time in which they should be delivered was properly submitted to the jury.

Appeal from St. Louis City Circuit Court.—*Hon. Daniel D. Fisher,* Judge.

AFFIRMED.

*David Murphy* and *Carl Otto* for appellant.

What amounts to a waiver is a question of law; and such questions should not be submitted to the decision of

the jury. Morgan v. Durfee, 69 Mo. 469. Waivers are either express or implied:—the former are evidenced by contract; the latter rest upon the presumed intention which the law prescribes to certain acts or conduct following a charge in the relationship of the parties. Union Tr. Co. v. Ins. Co., 79 Mo. App. 362; Cademantori v. Gauger, 160 Mo. 367; Newton v. Rebenack, 90 Mo. App. 663. By accepting work that is finished after the time agreed upon or in a different way from that contracted for and by assenting to such default he waives strict performance. 7 Am. and Eng. Ency. of Law (2 Ed.), p. 154. He will not be permitted to insist on the terms which he has waived. Murphy v. Black, 78 Mo. App. 316; Chambers v. James, 18 Mo. App. 340; Steam Heating Co. v. Bissell, 41 Mo. App. 426.

*Lee Meriwether* for respondents.

STATEMENT: Plaintiffs have been partners in the candy business, in the city of St. Louis, for a number of years. In 1902, 1903 and 1904, they had a contract with the Columbia, Grand and Imperial theatres, in said city, for selling candy to theater-goers by means of a slot machine, described as an automatic box, which would open by dropping a silver dime into the slot. These boxes were small affairs and when in use were screwed on the back of the theater seats. In January, 1902, plaintiffs had installed their boxes in the Columbia theater but had none to put in the Grand and Imperial. The boxes they had in the Columbia were cast-iron affairs and could not be manufactured as readily as they desired. With a view of installing boxes in the Grand and Imperial theaters, Murmann, one of the plaintiff's, went to defendant Wissler, who is a manufacturer, principally, of civil engineers' and surveyors' instruments, with one of the iron boxes in his hand, to see if defendant could manufacture a lighter box in shorter time than it would require to make then of cast-iron. After discussing the matter in

several interviews, Murmann gave defendant an order for fifteen hundred boxes to be made of sheet-steel, for which he agreed to pay seven hundred and fifty dollars, four hundred dollars of which he paid when he gave the order. The balance was to be paid when the order was filled.

Murmann testified that defendant guaranteed the boxes would be as good or better than the sample (which was made of cast-iron) and agreed to deliver them in sixty days; that the contract was made in October or November, 1902, but the firm received no boxes until April fourth or fifth, 1903, when it got six hundred and forty-five from the defendant; that of this number, thirty had to be removed and returned to defendant, for the reason the lids would not remain closed; that in a week or ten days one hundred and fifty more were found out of order and would not work and he returned them to defendant and received others; that they were continually getting out of order and he was continually returning them to defendant and getting others, so at the end of the season (May 15, 1903) there were but little over one-half of the boxes in use; that the fifteen hundred boxes were never received; that from May fifteenth to August following he kept after defendant and got enough boxes to fit up both theaters (the Grand and Imperial) altogether something over thirteen hundred boxes, but had the same trouble with them and after many complaints defendant suggested that the defect could be remedied by inserting a steel pin so as to prevent the catch from flying back; that it was agreed that the defendant should insert the pins for seven cents per box or per pin; that the pins were put in eight hundred and sixty boxes and they worked much better, but did not fill the purpose for which they were intended, and plaintiffs were continually returning the boxes to defendant until he finally said, "You fellows are taking up too much time," and that he did not want the boxes at his shop; that plaintiffs tried the boxes for the

season of 1903 and 1904 but they were continually getting out of order, would not answer the purpose for which they were intended, the public was dissatisfied with them, and on January 9, 1904, they took them out. Murmann also testified that the cast-iron boxes in the Columbia worked well and were still in the theater; that plaintiffs paid workman from three hundred and fifty to three hundred and sixty dollars for putting in the boxes made by the defendant and that he (Murmann) charged his company one hundred and fifty dollars for his time spent in looking after the boxes.

Murmann's evidence shows that the cast-iron boxes had a brass spring and that he told defendant a good many of these springs broke and he thought a steel spring might be stronger, but the defendant made no answer to this suggestion. He stated that the total number of boxes received from defendant was thirteen hundred and seventy-six, delivered between April first and August first, 1903. The chief difficulty with the automatic operation of the boxes was in the spring, and Murmann testified that defendant always claimed the spring was "too powerful." The evidence for plaintiffs tends to show that their loss per day by not having proper boxes was about ten dollars.

The suit was to recover money paid for the boxes and for the loss of profits that would have accrued had proper boxes been furnished at the time it was agreed they should be furnished. The answer was a general denial and an affirmative statement that the boxes were manufactured according to Murmann's instructions and under his immediate supervision. A counterclaim was also pleaded in which defendant claimed plaintiffs owed him $59.75 for inserting pins in the boxes, $20.40 for work and labor on other boxes, $29.50 for putting springs in cast-iron boxes and the balance of the contract price for boxes manufactured and delivered to plaintiffs.

The defendant testified that he did not agree to manufacture the boxes in any particular time but told Mur-

mann it would take at least three months to make the necessary die for making the boxes; that he did not agree to make the boxes like the sample nor guarantee that they should be as good or better than the cast-iron ones; that the boxes were made according to Murmann's directions and practically under his supervision; that he gave special instructions to put in steel springs, which were too strong, and the whole trouble with the automatic action of the boxes was on account of the spring; that he commenced to make the boxes as soon as the necessary die could be prepared and after the completion of the die made them as rapidly as possible. Defendant gave evidence tending to prove his counterclaim.

The jury found the issues for plaintiffs and assessed their damages at five hundred dollars and found for defendant on his counterclaim for $59.51. Timely motions for new trial and in arrest of judgment filed by defendant were overruled, whereupon he appealed to this court.

BLAND, P. J., (after stating the facts).—The only error assigned by defendant is the giving of instruction No. 3, and the refusal of the court to give the following instruction (not numbered) :

"3. The court instructs the jury that plaintiffs cannot recover against defendant for a failure to furnish the sheet steel boxes on or before January 6, 1903, if the jury believe that defendant made and entered into an agreement with plaintiffs that he would so furnish said boxes at said time if the jury further find that plaintiffs waived said condition and accepted said boxes after January 6, 1903, and used them in their business from April 4, 1903, until January, 1904, and had alterations and repairs made upon them.

"The jury are instructed if you find for the plaintiffs on their cause of action in fixing the amount to be awarded them, you should consider the following elements:

116 App—26

"1.  The delay, if any, of defendant in delivering the boxes beyond the time within which he agreed to deliver them (if you find from the evidence that he did agree to deliver them within a specified time) and failed to do so.  You will allow plaintiffs for the loss in profits to plaintiffs on sales of candy, if any during the period between the dates of agreed delivery, and actual delivery occasioned by the delay in delivering said boxes (provided you further find from the evidence that the boxes in question were of a kind not to be had or obtained by plaintiffs, except by special order, involving several months to manufacture· and deliver) provided you do not find that plaintiff did not waive such delay.

"The court instructs the jury that plaintiffs cannot recover against defendant for a failure to furnish the sheet steel boxes on or before January 6, 1903, if the jury believe that defendant made and entered into an agreement with plaintiffs that he would so furnish said boxes at said time, if the jury further find that plaintiffs ·accepted· said boxes after January 6, 1903, and used them in their business from April 4, 1903, until January, 1904, and had alterations and repairs made upon them."

The instruction given submitted to the jury to find from the evidence whether or not the plaintiff waived the time in which the boxes were to be manufactured; the one refused moved the court to declare as a matter of law that the acceptance of the boxes by plaintiffs, after the date on which they were to be delivered, was a waiver of performance within the contract period and that no damages could be recovered on account of the delay in the delivery of the boxes.  The controversy then, is whether the waiver of the time in which the boxes were to be delivered under the contract, was a question of law to be passed on by the court or a question of fact to be determined by the jury.  Whether or not there was a waiver is ordinarily a question of intention and therefore a question of fact, unless the alleged waiver depends upon the interpreta-

tion of a writing; where it does so depend, it is, of course, a question of law, if the writing is unambiguous. [Lee v. Hassett, 39 Mo. App. 67.]

In 7 Am. & Eng. Ency. of Law, p. 154, the law is stated as follows: "By accepting work that is finished after the time agreed upon, or in a different way from that contracted for, and by assenting to such default, he waives strict performance and forfeits all remedies but damages for the faulty workmanship and for his own consequent loss, and the right to deduction for any defectiveness in the work."

"Waiver," says Bishop, "is where one in possession of any right, whether confered by law or by contract, and of full knowledge of the material facts, does or forbears the doing of something inconsistent with the existence of the right or of his intention to rely upon it; thereupon he is said to have waived it, and he is precluded from claiming anything by reason of it afterwards." [Bishop on Contracts (1887), sec. 792.]

In Fairbanks, Morse & Co. v. Baskett, 98 Mo. App. 53, 71 S. W. 1113, citing Stiepel v. Life Assn., 55 Mo. App. 224, the court said "Waiver involves the notion of an intention entertained by the holder of some right to abandon or relinquish instead of insisting on the right."

In Warner v. Crane, 50 Mich. 300, cited in Dailey v. Kennedy, 64 Mich. 208, it is said: "Waiver is a voluntary act. . . . But that action is in no sense voluntary which a party cannot decline to take except at the peril of liberty of life or property."

In West v. Platt, 127 Mass. 367, 372, it is said that waiver depends altogether on the facts of the matter to which it pertains.

The evidence relied upon to establish a waiver, in the case at bar all came from one of the plaintiffs (Murmann) and of course plaintiffs are bound by this evidence, which shows that they had a contract to put the automatic boxes in three theaters; that they only had on hand enough of such boxes to supply one of the three

theaters, and contracted with defendant to manufacture fifteen hundred other boxes to be delivered in sixty days; that after the expiration of the sixty days, defendant had not made any of the boxes and was repeatedly urged to "hurry them up," but that he did not even commence to make them until more than a month after the time for their delivery had expired, and thereafter they were accepted, from time to time, as manufactured, until thirteen hundred and sixty-seven had been made and delivered. The evidence also shows that plaintiffs paid four hundred dollars on the contract price of the boxes, in advance; and Murmann testified that the boxes could not be procured elsewhere and that plaintiffs were compelled to take them from defendant whenever they could get them to keep their contract with the theater companies. On this evidence it seems to us that it is a grave question of doubt whether or not there was any evidence of a waiver of the damages accrued from the non-delivery of the boxes in the time stipulated. Plaintiffs had paid more than one-half the contract price for the boxes and were in a situation that almost compelled them to accept the boxes as they were manufactured. The acceptance of goods or machinery after the expiration of the time in which they were to be delivered is but prima facie evidence of waiver and is therefore a question for the jury. [Merrimack Mfg. Co. v. Quintard, 107 Mass. 127.]

The general rule of damages in the purchase and sale of personal property, where the seller fails to deliver within the time agreed upon, is the difference between the contract price and the market price at the time and place of delivery; but if the goods are bought for a specific purpose known to the vendor, or where the thing sold is to be made by the vendor to be used for a particular purpose and cannot be had elsewhere, or where the purchase price is paid in advance, the rule does not apply, and the buyer ought to receive full and just compensation if he suffers loss by default of the

other party and is not himself in fault, and he does not waive his right to such recovery by accepting the goods after the time agreed upon for their delivery. [Redlands Orange Growers Association v. Gorman, 76 Mo. App. 184, approved by the Supreme Court on certification to said court (161 Mo. 203, 61 S. W. 820; s. c., 54 L. R. A. 718); Ramsey v. Tully, 12 Ill. App. 463; Van-Winkle & Co. v. Wilkins, 81 Ga. 1. c. 104.]

We think that if there was any substantial evidence tending to prove a waiver, it was clearly a question for the jury, and affirm the judgment. All concur.