WYMAN, Receiver, Appellant, vs. KIMBERLY-CLARK COMPANY, Respondent.

*May 25 — June 19, 1896.*

*Foreign mutual fire insurance companies: Receivers: Limitation of actions: Statute construed: "Claims due."*

1. In ch. 293, Laws of 1893 (providing that all foreign mutual fire insurance companies "that have been declared to be insolvent, and where a receiver has been appointed, shall, within six months after the passage and publication of this act, proceed to collect *all claims due* from policy holders within this state for premiums or assessments," and "that no action shall be maintained to enforce any such claims so *due* unless such action shall be commenced within" said six months), the phrase "all claims due" is used in the sense of all claims existing or owing, whether already payable or not, and the act therefore applies to claims on premium notes for assessments subsequently made and notified.

2. The receiver of a foreign corporation, appointed by the court of another state, can sue as such in this state only as a matter of comity and under such terms and conditions as the legislature may impose, and hence a statute limiting the time within which actions may be brought by him in certain cases to six months is valid, irrespective of the question whether it would be valid technically as a statute of limitations.

APPEAL from an order of the superior court of Milwaukee county: R. N. AUSTIN, Judge.. *Affirmed.*

This was an action brought by the plaintiff, as receiver of the Minneapolis Mutual Fire Insurance Company, a corporation organized under certain general laws of the state of Minnesota, against the defendant, a corporation of this state, to recover the amount of six certain premium notes given by the defendant to the said Minneapolis Mutual Fire Insurance Company for its six policies of insurance issued to the defendant while it was transacting, and duly licensed as a foreign insurance company to transact, the business of insurance in this state. The complaint alleged, among other things, that the defendant never surrendered said policies of insurance, or either of them, but that they remained in full force and effect up to the 20th day of December, 1890, when said insurance company became and was declared insolvent, and one Charles Shandrew was appointed and qualified as receiver of said company for the purpose of winding up its affairs, in an action for that purpose commenced in the district court for the county of Hennepin and state of Minnesota by one Benjamin F. Nelson, in which action an injunctional order had been granted, restraining said insurance company from further transacting business, and sequestering its assets; that judgment was rendered in that action January 24, 1891, adjudging said insurance company wholly insolvent and unable to pay its debts; that on the —— day of February, 1891, the plaintiff was appointed and qualified as receiver of said insurance company, in place of said Shandrew, deceased, and afterwards filed his petition in said district court, asking that an assessment of 100 per cent. be made upon the premium notes of said company, in order to pay its debts and expenses of receivership; and that an order was made thereon by said court, February 3, 1891, levying an assessment of 100 per cent. on said notes accordingly, subject to credit for any previous special assessments made and paid

thereon, and providing for giving notice of such assessment
to the makers of said notes, etc., and that, in case of failure
of any maker of any such note to make payment within
thirty days, the said receiver, the plaintiff, might sue for·
and recover the whole amount of said assessment against
him, less any credit he might be entitled to thereon.   It was.
alleged that due notice was given to the defendant, and de-
mand of payment made, within twenty-five days after the·
date of said order of February 3, 1891; that the action was.
commenced June 12, 1895, and that more than thirty days.
had before then elapsed since said demand, and the defend-
ant had refused to make payment.   Judgment was demanded
for the amount of the notes, less certain credits, with inter-
est from February 13, 1894.

The defendant demurred to the complaint on the follow-
ing grounds, among others: That the plaintiff.had not legal
capacity to sue; and that the action had not been commenced
within the time limited by law, under and by virtue of ch.
293 of the laws of this state for 1893, because it appeared
upon the face of the complaint that the insurance company
had been incorporated outside of this state, that it had been
declared insolvent January 24, 1891, that a receiver had
been appointed December 18, 1890, by the Minnesota court,
and that this action was not commenced until June 12, 1895,
and the right of action was therefore barred by said chapter.
The circuit court made an order sustaining the demurrer,
from which the plaintiff appealed.

For the appellant there were briefs by *Winkler, Flanders,
Smith, Bottum & Vilas,* and oral argument by *E. P. Vilas.*
*Geo. E. Sutherland,* for the respondent.

PINNEY, J.   1. The question to be determined is whether
the plaintiff is barred or precluded from maintaining his
action by reason of the true effect and meaning of ch. 293,
Laws of 1893, which provides that: " All mutual fire insur-

ance companies, incorporated outside of the state of Wisconsin, that have been declared to be insolvent, and where a receiver has been appointed, shall, within six months after the passage and publication of this act [May 3, 1893], proceed to collect all claims *due* from policy holders within this state for premiums or assessments.   The insurance commissioner is hereby authorized to direct such inquiries and interrogatories to any receiver so appointed, as he may deem appropriate, and it is hereby made the duty of all such receivers to answer such inquiries under oath; and no action shall be maintained to enforce any such claims *so due*, unless such action shall be commenced within six months after the passage and publication of this act, and no such action shall be maintained at any time by such receiver who neglects or refuses, for the period of thirty days, to answer truthfully all such inquiries so directed to him by said insurance commissioner."   The title of the act recites that it is "to require mutual fire insurance companies, incorporated outside of the state of Wisconsin and doing business within the state, that have been declared insolvent, to collect all claims *due* from policy holders within a time specified, and for other purposes."   Each of the premium notes contains a promise of the defendant to pay the Minneapolis Mutual Fire Insurance Company the sum for which it was given, " by instalments, at such times as the directors of the company may order and assess, for the losses and expenses of said company, pursuant to its charter and by-laws;" and it is claimed on behalf of the plaintiff that the liability of the defendant was, at most, but a contingent one, and there was nothing *due* upon either of the premium notes until the assessment of February 3, 1894, had been made, and therefore there was nothing *due* on either of them when the act in question was passed, and that the act had no application to claims on premium notes for assessments made and notified after its passage and publication.

We cannot assent to this view. The act was founded on broad and general considerations relating to the enforcement of "all claims due from policy holders within this state for premiums or assessments," where the insurance company had been declared insolvent, and where a receiver had been appointed; and it was designed to restrict the right of any such company, or its receiver or representative, to resort to and use the process of the courts of this state for the collection of such claims to six months after the passage and publication of the act. The phrase, "all claims due," which occurs in the act and in its title, is used in the sense of all claims existing or owing, and not in the more restricted sense of claims matured so as to have become the proper subject of an action. It was not intended to leave it optional to make or delay an assessment, or to give notice of one already made, or not, as the receiver or representative of the corporation might choose, and thus, at will, extend the period prescribed by the statute. The act required the claimant, within six months, to proceed to collect all claims *due*, i. e. all claims owing, and to make and notify the assessments and bring the action within that period.

The argument turns upon the meaning to be given to the phrase "all claims due," as used in the act. The word "due" signifies, in its larger and general sense, that which is owed; that which one contracts to pay, do, or perform to another; that which is owing. Webst. Dict. "DUE;" Black, Law Dict.; Anderson, Law Dict. In its larger sense, it covers liabilities matured and unmatured (*People v. Vail*, 6 Abb. N. C. 210), and may import indebtedness without reference to the day of payment or that that day has passed, or be used, not in the sense of payable, but as importing an existing obligation (*Scudder v. Coryell*, 10 N. J. Law, 345; *Sand Blast F. S. Co. v. Parsons*, 54 Conn. 313; *Fowler v. Hoffman*, 31 Mich. 219). When used in an attachment statute, it signifies that the day when payment ought to be made has.

arrived. *Bowen v. Slocum*, 17 Wis. 183–184. Much depends upon the context and evident purpose intended. *U. S. v. State Bank of N. C.* 6 Pet. 36. As used in this statute, and as applied to premium notes, we think the phrase "claims due" imports existing obligations or indebtedness, without reference to whether an assessment has been made or notified, or not. The evident policy and purpose of the act forbid that its effect should be restricted to claims already payable, as distinguished from claims owing which the claimant can presently render payable.

2. It is well settled that, by the law of comity between the several states, a corporation created by one sovereignty is permitted to make contracts in another and to sue in its courts, but upon such terms and conditions as such other sovereignty shall prescribe; and it may be excluded from suing in its courts when it is considered contrary to its policy or prejudicial to its interests. *Bank of Augusta v. Earle,* 13 Pet. 520, 588, 589; *Paul v. Virginia,* 8 Wall. 180, 181; *State ex rel. Drake v. Doyle,* 40 Wis. 197, 198; *State v. U. S. Mut. Acc. Asso.* 67 Wis. 629, 630; *Philadelphia Fire Asso. v. New York,* 119 U. S. 117, 118; *State ex rel. Covenant Mut. Ben. Asso. v. Root,* 83 Wis. 680; *Larson v. Aultman & Taylor Co.* 86 Wis. 284. The whole matter is one of public policy and resting in the discretion of the state, and it may impose such terms and conditions as it sees fit. The same principle and right of exclusion from the privilege of suing in the courts of the state is applicable in the case of a receiver or other representative of the corporation. Indeed, the right of any receiver appointed by the court of another state to sue as such in our courts rests upon the principles of interstate comity, and may be allowed only upon such conditions, or prohibited entirely, as the legislative authority of the state may deem most conducive to the interests and welfare of the people of the state. *Gilman v. Ketcham,* 84 Wis. 60; *Parker v. Stoughton Mill Co.* 91 Wis. 174; *Swing*

*v. White River L. Co.* 91 Wis. 517. For these reasons, it is not necessary to consider whether the act in question would be valid or operative technically as a statute of limitations or not; for we think it closes the courts of this state against claims such as the plaintiff has brought before the court, and that the defendant's demurrer was rightly sustained.

*By the Court.*— The order of the superior court is affirmed.