WILLIAM H. DOERR v. NATIONAL FIRE INSURANCE COMPANY OF HART-
FORD, Appellant.

Division One, July 30, 1926.

1. **AUTOMOBILE INSURANCE: Waiver: Refused Instruction: Abandonment.** In an action on an insurance policy, which contained a provision that if a certain warranty therein was violated the policy should be void, and wherein plaintiff claimed that the warranty was waived, the company, having asked and the court having refused an instruction that there was no evidence of a waiver of terms of the policy, did not thereby lose its right to persist in that contention, because afterwards, being forced to do so, it joined in submitting that issue to the jury.

2. ———: **Precedent Condition: Waiver after Loss: Locking Automobile.** A provision in an insurance policy, whereby the holder is insured against the loss of his automobile by theft, that in consideration of a reduction of fifteen per cent in the regular premium, the insured would at all times maintain a certain named locking device on the automobile and would not leave it without locking the device, or otherwise the policy would be void, expressed a condition upon which the policy was to be in force at the time of the theft; and the device not being locked at the time the machine was stolen, a promise by the company's adjuster, after its theft, with knowledge that the device was not locked, that if the automobile was not found within sixty days the policy would be paid, was not a waiver of the condition; and the insured having in no wise altered his position on account of the adjuster's promise, the company is not estopped, but is entitled to invoke a breach of the condition. The contract must be construed with reference to the nature of the subject insured, and its use and the purpose of the condition imposed, and the condition was one which if not complied with before the theft could not be supplied by any act of the insured after loss, but its effect was to suspend the policy while the device was not locked, and therefore the adjuster's promise was not a waiver. [Distinguishing Carp v. Queen Ins. Co., 116 Mo. App. 528.]

3. ———: ———: ———: **Adjustment.** The fact that the agent of the insurance company who signed the policy told the insured to go to the adjusting company and have his loss adjusted is neither estoppel nor waiver where adjustment was necessary by the terms of the policy and there could be no liability in any event without adjustment.

4. ———: ———: **Waiver: Consideration.** Where a breach of a condition of an insurance policy suspends it, a promise to pay it after the loss has accrued and knowledge of the breach, in order to amount to a waiver of the condition, must be supported by a new consideration, or else the elements of technical estoppel must be present.

5. ———: **Compromise.** The offer of the adjuster to pay about seventy per cent of the amount stated in the policy, offered after loss as the amount

of insurance which the premium paid would have purchased under a po-·licy containing no warranty that a locking device should at all times be maintained on the automobile, is not an acknowledgment of liability for the whole amount of the policy, but an offer made by way of compromise, or as a species of novation.

6. ———: **Tender Back of Premium Paid.** Where the term of the policy was one year, and it had run four months; it covered the interest of a mortgagee for one half its face, which the company had satisfied; knowledge of a breach by the insured of a warranty did not come to the insurer until after the loss, and the breach was material and is depended upon as a defense, a return of the premium paid was not required.

7. **WAIVER AND ESTOPPEL: Intention: Consideration.** Waiver depends on intention in so far as it is a distinct doctrine of the law not shading into estoppel. It depends on what one intended to do himself. Estoppel depends upon what one caused his adversary to do.

---

Corpus Juris-Cyc. References: **Appeal and Error,** 4 C. J., Section 2625, p. 713, n. 73 New.  **Fire Insurance,** 26 C. J., Section 406, p. 326, n. 27.  **Motor Vehicles,** 28 Cyc., p. 50, n. 59 New.

Transferred from Springfield Court of Appeals.

REVERSED.

*Hogsett & Boyle* and *Howard Gray* for appellant.

(1)  The trial court erred in refusing appellant's peremptory instruction in the nature of a demurrer at the close of all the evidence. (a)  The lock warranty was a reasonable and valid requirement, and the respondent's failure to comply with it rendered the policy null and void as far as the theft of the automobile was concerned, Billet v. Ins. Co., 129 Atl. (N. J.) 209; Ins. Co. v. High, 153 Ark. 156; Frick v. Ins. Co., 184 S. W. 1161; Brooks v. Ins. Co., 11 Mo. App. 349; Loehner v. Ins. Co., 17 Mo. 255; Mers v. Ins. Co., 68 Mo. 131; Glendale Woolen Co. v. Ins. Co., 21 Conn. 19; First National Bank v. Ins. Co., 50 N. Y. 45.  (b)  Before the forfeiture could be waived the acts or conduct relied upon must have been such as to work an estoppel, and  the dissenting opinion in the Court of Appeals properly holds that no such showing was made. Bolan v. Ins. Co., 58 Mo. App. 231; Dezell v. Casualty Co., 176 Mo. 253; Lowenstein v. Ins. Co., 227 Mo. 100; Armstrong v. Ins. Co., 130 N. Y. 560; Chandler v. Ins. Co., 180 Mo. App. 394; Gerhart Realty Co. v. Assurance Co., 86 Mo. App. 596; Colonius v. Ins. Co., 3 Mo. App. 56; Boren v. Brotherhood of Railroad Trainmen, 145 Mo. App. 137; Cohn v. Ins. Co., 62 Mo. App. 277; Keet-Roundtree D. G. Co. v. Ins. Co., 100 Mo. App. 504; Adj. Co. v. Ins. Co., 1 Fed. (2nd Series) 800; Gibson v. Ins. Co., 159 N. Y. 418; Ins. Co. v. Wolff, 95 U. S. 333; Dolan v. Ins. Co., 88 Mo. App. 674; Gibson v. Ins. Co.,

82 Mo. App. 519; Walker v. Knights of Maccabees, 177 Mo App 54; Tinsley v. Ins. Co., 199 Mo. App. 704; Ceresia v. Mutual Aid Assn., 211 S. W. 83; Shusterman v. Ins. Co., 253 S. W. 95. (c) The acts and conduct of appellant's agents did not mislead respondent, or cause respondent to change his position to his prejudice, and did not put him to any trouble or expense; hence there were no elements of estoppel, and therefore no waiver. Authorities supra. The alleged promise by the adjuster to pay if the car was not found within sixty days was a mere statement of intention which could be changed at any time, and was without effect upon the situation of the parties. Gerhart Realty Co. v. Assurance Co., 86 Mo. App. 600; Card v. Ins. Co., 4 Mo. App. 424; Colonius v. Ins. Co., 3 Mo. App. 56; Richards v. Ins. Co., 83 Mich. 508, 21 Am. St. 611; Joye v. Ins. Co., 32 S. E. 446. (d) The majority opinion in the Court of Appeals (holding that no element of estoppel need be present in order to create a waiver) is not sustained by the cases whicn it cites, in each of which cases there were present one or more of the elements of estoppel. Bolan v. Fire Ins. Co., 58 Mo. App. 225; Pace v. Ins. Co., 173 Mo. App. 485; Myers v. Casualty Co., 123 Mo. App. 682; Travis v. Ins. Co., 179 S. W. 766; Ramsey v. Ins. Co., 160 Mo. App. 236; Keys v. Council of Security, 174 Mo. App. 671; Dye v. Ins. Co., 227 S. W. 1062. (2) Appellant's requested instructions did not waive its demurrer to the evidence or concede the sufficiency of respondent's evidence on the question of waiver. After the refusal of appellant's general peremptory instruction, appellant requested specific instructions withdrawing the waiver question as a matter of law; and when these instructions were likewise refused, appellant was entitled to fall back to its second line of defense and meet plaintiff upon the ground forced upon it by the action of the trial court. Everhart v. Bryson, 244 Mo. 516; Kenefick-Hammond Co. v. Fire Ins. Society, 205 Mo. 294; Torrance v. Pryor, 210 S. W. 432. (3) Appellant was not obligated to tender back the premium paid for the policy. Although the policy was forfeited as to the respondent, it remained valid as to the mortgagee, and appellant in fact paid the mortgagee; wherefore appellant was entitled to retain the premium. Appellant did not learn of the ground of forfeiture until after the loss, in which circumstances tender is not required. 14 R. C. L. 1193; 26 C. J. 326. Harwood v. Ins. Co., 170 Mo. App. 304. The respondent is insisting that the policy is not forfeited as to him but is still in force; hence tender is not required. Senor v. Ins. Co., 181 Mo. 113; Ice Co. v. Ins. Co., 196 Mo. App. 253.

*Hackney & Welch* for respondent.

(1) The lock clause of the policy was merely a promissory warranty or a condition subsequent. The breach thereof would not

render the policy void but voidable, and to rely upon same it was incumbent upon the appellant to promptly declare a forfeiture on account thereof. 32 C. J. 1276, 278, 280, 281, 1291; Gold Issue Mining Co. v. Ins. Co., 267 Mo. 604; Travis v. Continental Ins. Co., 179 S. W. 768. (2) Waiver of a breach of warranty, or a condition subsequent, is a matter of intention and not of estoppel. Lance v. Royal Ins. Co., 259 S. W. 535; Schwab v. Brotherhood of American Yeomen, 264 S. W. 690; Life Assn. v. Vaden, 261 S. W. 324; Holt v. National Life & Accident Ins. Co., 263 S. W. 524. (3) By agreeing to pay the loss, by requesting the respondent's return to the adjuster's office from time to time, lulling the respondent into a feeling of security and by failing to declare forfeiture with reasonable promptness, the appellant is barred from asserting such defense, even on the ground of estoppel.

LINDSAY, C.—The plaintiff sued on a policy for $1400, insuring his automobile against loss by theft. The insurance was granted under and pursuant to an open policy held by the Consolidated Bond & Security Company, which took plaintiff's note secured by a chattel mortgage upon the automobile. The insurance was payable to the security company and to plaintiff as their interests might appear. Plaintiff had judgment for $723.83, the difference between the total sum of the insurance and the amount of the unpaid indebtedness secured by the chattel mortgage upon the automobile, the defendant having purchased the note so secured, before this suit was brought.

The judgment was affirmed by the Springfield Court of Appeals, 253 S. W. 39, but there was a dissent, and the cause was certified to this court at the request of the dissenting judge, and under his view that the opinion of the majority was in conflict with certain decisions of the St. Louis Court of Appeals, and of the Kansas City Court of Appeals.

The paramount question in the case, the question upon which the court divided, is whether the plaintiff made a case for the jury upon the issue, that defendant had waived the breach of a certain condition of the policy. The policy provided that in consideration of the reduction of premium granted, it was made a condition that the insured would at all times maintain a certain named and approved locking device in working order on the automobile and that the insured would not leave the automobile without locking the device, for which allowance of reduction was made; otherwise, the policy should be null and void as far as the theft of the automobile was concerned. The plaintiff maintained the locking device required, which locked the gear shift of the car, but admitted that on the night the car was

stolen, he had run it into his garage and after turning the key and locking the device, he had left the key therein. The door of the garage was locked by him, and the garage had been entered by breaking that lock.

. The plaintiff's case, under his Instruction 1 authorizing a recovery, was submitted upon the theory that after turning the key of the device, he had left the key therein, but that, through certain acts, and conversations had between him and defendant's agents, as submitted by the instruction, there had been a waiver by defendant of the breach of the policy. The purchase of the note by defendant was not included in the instruction as an act admitting liability or showing a waiver of the breach, and the court instructed the jury that they were not to consider the fact that the defendant had satisfied the interest of mortgagee, as an admission of liability. This, because of certain provisions of the policy.

The defendant had asked for a peremptory instruction at the close of the plaintiff's case, and at the close of the whole case. The defendant also asked for an instruction that there was no evidence of waiver on the part of defendant or its agents of any of the terms of the policy, which was refused.

The court gave for defendant an instruction which told the jury that plaintiff's act of turning the lock and leaving the key therein, was not a compliance with the lock warranty in the policy. Thus, the plaintiff founded his right to recover upon the claim of waiver on the part of defendant of the breach of the policy. The defendant having asked the specific instruction that there was no evidence of such waiver, did not lose the right to persist in that contention, because afterward, being forced to do so, it joined in submitting that issue to the jury. [Torrance v. Pryor, 210 S. W. 432, 433; Everhart v. Bryson, 244 Mo. 516, 517; Kenefick-Hammond Co. v. Fire Ins. Society, 205 Mo. 294.]

The plaintiff lived in Kansas City and the automobile was stolen there. He testified that upon discovery of the theft, he reported it to Mr. Norman, who, plaintiff said, was the general agent who had countersigned and delivered the policy. Norman instructed him to go to the Midwest Adjustment Company, as plaintiff stated it—"to have my loss adjusted." This adjustment company was a corporation of which a Mr. Garrett was manager, and for it also a Mr. Campbell was an investigator and adjuster in the settlement of claims under insurance policies. The business of the company was the adjustment of losses. Campbell had charge of the office and assumed the duties of Garrett, in the absence of the latter. The question of a waiver by defendant arises upon the testimony as to what occurred between plaintiff and the persons mentioned. As to the report of the loss to Norman, plaintiff testified: "I told Mr. Norman that

I put my car in the garage the night before; turned the key and locked the Yale lock on the door.'' Testifying as to his interview with Campbell, plaintiff said he ''explained everything to him'' about how he left the car and the condition in which he found the lock on the garage.

Campbell asked him for the key to the locking device and plaintiff told him he had left it in the lock. Plaintiff testified that Campbell said: ''Well, we will look into that. We have ways of finding cars and perhaps we can find it for you before the sixty days is up and if we don't we will pay you.'' He said Campbell told him to come back later, and see him, and he would try and locate plaintiff's car. Plaintiff went back in about three weeks and was informed by Campbell that nothing had been heard from the car, but that they were still looking for it, and was told to come back again. He went back in about thirty-five days, and was told the same thing. Further testifying, plaintiff said: ''I again went back within the three days of the sixtieth day and asked him if he had heard from my car and he said: 'You have three days yet. We can't tell what is liable to happen in three days, and come back the sixtieth day and if we have not found it we will straighten it up.' '' Plaintiff further said: ''I went back the sixty-first day and was referred by Mr. Campbell to Mr. Garrett, who told me he would allow me $1040, and I would not accept it. He told me he could not allow me any more, that being all the premium called for without this lock warranty on it, and I told him I would not accept it. I went back three days later and Mr. Garrett had a letter from the company denying liability. I had paid the premium of over $70 on the policy. My car has never been found and no part of the premium has ever been returned.''

Campbell testified that he did not tell plaintiff of any denial of liability on the part of the company, because that was not part of his duty as an adjuster. Garrett testified: ''We have printed forms called non-waivers and when there is any doubt in my mind about carrying out the contract, we will agree on a non-waiver and submit the contention to the company for approval. I didn't take any non-waiver in this case.'' He further testified that Campbell adjusted losses where there were no conflicts or confusion; that Campbell dealt with the insured directly. Campbell said that between the first and second visits of plaintiff he talked to Garrett about the loss, and told him the facts and circumstances attending it. He also said it was their ''usual practice and custom to notify the insurance company when there had been a claim breach of the lock warranty.''

This is not a case wherein the question is one of waiver of the condition to be complied with by the insured after occurrence of loss, but is one of a condition which was to be in a state of fulfillment by

the insured at the time of the occurrence of the loss, and was required so to be as a measure of protection against loss. The failure of the insured to observe the condition was not known to the insurer until after the loss occurred. The occurrence of the loss, and communication of the circumstances to defendant fixed the *status* of the parties at that time, and the force of the plaintiff's case is made to depend upon what took place upon and after that time.

The plaintiff's case was submitted upon the theory that a waiver of forfeiture could be found, from the failure during the sixty days to deny liability and from the statement of the adjuster that if the automobile was not recovered, the loss would be paid. There is no evidence that the plaintiff altered his condition on account of what was said to him. He did not claim, nor was there submitted in the instruction obtained by him, the claim that he incurred any expense, or refrained from doing anything he otherwise would have done, or, that he did anything, except to call upon the adjuster upon three subsequent occasions. We think there was no element of estoppel in the case, and plaintiff did not submit it upon the theory that his condition had been altered. The majority opinion of the Court of Appeals holds that the condition requiring the device to be locked when the automobile was left by the owner, was a condition subsequent; that its violation rendered the policy not void, but only voidable, at the election of the insurer, and that there could be a waiver without the element of estoppel, or any new consideration between the parties. The decision in Carp v. Queen Insurance Co., 116 Mo. App. 528, is cited, as authority, and reference is made to the reasoning of GOODE, J., in the opinion in that case. There, the policy contained the Iron Safe Clause, requiring the keeping by the insured of an inventory, and of his books of account in a fire-proof safe. In the opinion, Judge GOODE spoke of the extreme difficulty in many instances in distinguishing between warranties and representations, "affirmative and promissory warranties and the same kinds of representations," and (l. c. 540) said that no consistent effect was given by the courts to these distinctions in laying down rules. He said: "What is important to the sound decision of a cause wherein such a question is involved, is to know how closely it was necessary for the insured to keep the particular clause of the policy which the company asserts he violated, and the effect of a violation on his right to indemnity. The proper technical name and classification of the clauses are often of minor importance; and we think they are in the present instance. In this jurisdiction and in most others, the insured is required to perform substantially a stipulation like the one under advisement. When applied in particular cases, this rule means that though the insured has failed to keep the clause in all respects, yet if he has so far kept it that its purpose will not be de-

feated, his right to indemnity remains intact. [Malin v. Ins. Co., 105 Mo. App. 625, 80 S. W. 56; Meyer Brothers v. Ins. Co., 73 Mo. App. 166; Burnett v. Ins. Co., 68 Mo. App. 343; Western As. Co. v. Redding, 68 Fed. 708; McNutt v. Virginia Ins. Co. (Tenn. Ch. App.), 45 S. W. 61]'' Again, l. c. 542, he said: ''Whether the clause in question is a warranty or a representation, it is in the nature of a condition subsequent, like the agreement to furnish proofs of loss. Being akin to conditions subsequent, the contract for insurance took effect without regard to whether it was performed, and a breach of it did not necessarily, and of its own force, forfeit plaintiff's right to indemnity.'' His conclusion that the requirement in the policy that the books should be kept in an iron safe was akin to or in aid of the condition that insured would furnish proofs of loss, and of the nature of a condition subsequent, was founded upon the character of the condition dealt with, that is, it was one which, while the assured had not strictly complied with it, there was so nearly a compliance as to effect the real purpose. The real purpose looked to something to be done or furnished by the insured after loss and not before, the determination of the value of the property destroyed. In this case the condition accepted by the plaintiff, in consideration of a reduction of the fifteen per cent in the amount of the premium, was that, precedent to the leaving of the automobile, the device would be locked. The contract must be construed with reference to the nature of the subject insured, and of its use, and the purpose of the condition imposed. It was a condition of a nature, which, if not complied with before loss could not be supplied by any act of the insured after loss. The effect of the provision was to suspend the terms of the policy, when and while the plaintiff left the automobile without locking the device. We therefore agree with the conclusion stated in the dissenting opinion (253 S. W. l. c. 41): ''The policy then, by its own terms, coupled with the act of plaintiff, was not in force when the automobile was stolen.''

In the majority opinion, at page 40, certain cases are cited as upholding the contention that there was a case made to go to the jury on the question of waiver. We notice some of these cases, and the facts constituting them. In Pace v. Insurance Co., 173 Mo. App. 485, the assured had not complied with the Iron Safe Clause of his policy, and it was claimed his books and inventory had been burned, and the question was raised that he had set the fire. The adjuster, knowing that the Iron Safe Clause had not been kept, presented a non-waiver agreement, which the insured refused to sign. The adjuster neither admitted nor denied liability, but he did instruct the insured as to a method of preparing proofs of loss by resorting to invoices and to the insured's bank account, and thereupon the insured employed a party to make, in that manner, a statement and proofs

315 Mo.—18.

of loss. It was upon the testimony concerning those acts of the insured, so induced by the adjuster, that the Court of Appeals held there had been a waiver. But, in that case, the court said: ".Had the plaintiffs not received any instructions from the adjuster as to the manner and method of preparing their proof of loss, and had the case been presented solely on what the defendant's witnesses testified the adjuster said and did, it would then have been a very close question if a case of waiver had thereby been made for submission to the jury.''

In that case also, the court referred to and quoted the rule as stated in Myers v. Casualty Co., 123 Mo. App. 682, a case cited in the majority opinion. The rule, as there stated, was that: ''In such case a waiver of the forfeiture may result from the conduct of the insurer and it may be stated as a rule, that, where the insurer with knowledge that a cause of forfeiture exists so conducts himself towards the insured that the latter is justified in believing the right of forfeiture will not be invoked, and is led thereby into the expenditure of time or money in presenting his demand to the insurer, a waiver will be presumed. The insured has the right to rely on the implied assurance contained in such conduct and, after he has acted on it, the insurer will not be permitted to hark back and deny liability on the ground his prior actions show he had voluntarily abandoned the claim. [Dezell v. Insurance Co., 176 Mo. 253; Crenshaw v. Ins. Co., 63 Mo. App. 678; Bolan v. Fire Assn., 58 Mo. App. 225; Cohn v. Ins. Co., 62 Mo. App. 271.]''

Similar situations were existent in other cases cited. Thus, in Ramsey v. Insurance Co., 160 Mo. App. 236, the plaintiff failed to give notice of his illness within the time prescribed in his health policy; but, with knowledge of that fact the insurance company followed up the inquiry, making requirements, calling for information, and putting the insured to trouble and expense.

In Bolan v. Fire Association, 58 Mo. App. 225, waiver of insured's failure to make proofs of loss within the prescribed time was based upon evidence tending to show that during the prescribed period the plaintiff could have furnished the proof, but that during that period he was led to believe by the statements and conduct of the defendant's agents that the proofs were unnecessary, and would not be required. In these and other cases there was present some element of estoppel.

Counsel for plaintiff urge that waiver is a matter of intention and not of estoppel. Upon that subject the discussion by GOODE, J., in Fairbanks, Morse & Co. v. Baskett, 98 Mo. App. 53, is enlightening and appropriate here. It was there said, at page 63: ''Waiver depends on intention in so far as it is a distinct doctrine of the law not shading into estoppel . . . Waiver depends upon what one intended to do himself; estoppel, rather upon what he

caused his adversary to do. There may be a valid waiver of rights of a certain kind (that is, formal as distinguished from substantial rights) without a consideration, showing that waiver differs from contract. . . . But where substantial rights are involved, we apprehend a waiver must be supported by a consideration to be valid.''

In this case, plaintiff testified that Norman, the agent who signed the policy, told him to go to the adjusting company and have his loss adjusted. An adjustment was necessary because, by the terms of the policy, the non-observance by plaintiff of his warranty to lock the automobile would not vitiate the right of the mortgagee, and the defendant was bound at all events to recover the automobile, or, to satisfy the claim of the mortgagee, which it did, even though it should deny liability to plaintiff.

Basing his right, under the circumstances, upon statements made by the agent and the adjuster, plaintiff does not claim that, because of the intention so expressed to him, he altered his condition in any manner. In the annotation to Phoenix Insurance Co. v. Grove, 25 L. R. A. (N. S.) 3, an Illinois case, there is a discussion of the distinction between what may constitute a waiver, where knowledge is acquired by the insurer after loss, and what may be waiver where knowledge is acquired before loss. It is there said: ''It is manifest that the situation of the parties is different where the insurer acquires knowledge after loss of a breach of the policy occurring before loss, than it is where notice reaches him before loss. Aside from the requirements in respect to proofs of loss, the contract has fulfilled its purpose when the event which it provides against has happened. The rights of the parties are then fixed. There is no possibility that the insured can be misled to his harm by silence or non-action of the company as to any breach of the policy which occurred before loss. The company, of course, may pay if it wishes, but if it fails to let the insured know what it intends to do, the latter cannot be injured, for, after loss, it is too late for him to get other insurance. Therefore it would seem to be the logical result of this situation, not only that mere silence or non-action on the part of the company will not affect its rights, but that any direct act in the nature of waiver, any promise to pay, after knowledge of the breach, must be based on good consideration, or else the elements of a technical estoppel must be present; that is, the company, by its conduct, must have put the insurer to some disadvantage, or cause him some expense, before it can be made liable. This in itself would be consideration enough to support an implied promise to pay.'' We think the conclusion there stated cannot be avoided.

The offer of Garrett to pay plaintiff $1040 was an act submitted as tending to show waiver. According to plaintiff's statement, this

was offered as the amount of insurance which the premium paid would have purchased under a policy not containing the locking device warranty. The offer was not an acknowledgment of liability, under the policy sued on containing that provision, but was an offer made by way of compromise, or as a species of novation.

There is some brief discussion of the failure of defendant to tender back the premium. The term of the policy was one year, and it had run about four months at the time of the loss. The policy covered the interest of the mortgagee, and that interest was satisfied. Knowledge of the breach of the warranty did not come to the defendant until after the loss. The breach was in respect to a material matter. Under all the circumstances a return of the premium was not required. [14 R. C. L. 1193; 26 C. J., 326; Harwood v. Ins. Co., 170 Mo. App. l. c. 304; Senor & Muntz v. Fire Ins. Co., 181 Mo. 113-114.]

In reaching these conclusions we have given consideration to what was said in Schwab v. Brotherhood of American Yeomen, 305 Mo. 148-155; in Mining & Milling Co. v. Fire Ins. Co., 267 Mo. 524, and in the earlier case of Dezell v. Fidelity and Casualty Co., 176 Mo. 253, 276, and other cases. The judgment should be reversed. *Seddon, C.,* concurs.

PER CURIAM:—The foregoing opinion by LINDSAY, C., is adopted as the opinion of the court. All of the judges concur.