**CONSERVATIVE FEDERAL SAVINGS & LOAN ASSOCIATION, a corporation (Plaintiff), Respondent,**

v.

**George W. WARNECKE (Defendant), Appellant.**

No. 30228.

St. Louis Court of Appeals. Missouri.

May 19, 1959.

Motion for Rehearing or to Modify Opinion or to Transfer Cause to Supreme Court Denied June 15, 1959.

Grand, Peper, Martin & Roudebush, George S. Roudebush, St. Louis, for appellant.

Suelthaus & Krueger and W. W. Sleater, III, St. Louis, for respondent.

ANDERSON, Judge.

This is an action brought by plaintiff, a lessee in the Paul Brown Building in St. Louis, to construe its lease and to declare that a claimed increase under an escalator clause in the rental provisions of said lease was ineffective for want of timely notice to it of defendant's claim to said increase. Defendant, the lessor, in his answer requested a finding that the said escalator clause was operative and that plaintiff was indebted to him for additional rent, for which amount defendant prayed judgment. The court found the issues in favor of plaintiff and, from the judgment entered, defendant has appealed.

On September 11, 1951, respondent and the Paul Brown Realty and Investment Company, a corporation, entered into a lease, by the terms of which the latter leased to respondent store rooms numbered 200 and 202 North Ninth Street, which were located on the ground floor of the Paul Brown Building, together with mezzanine and basement space, for a period of ten years commencing December 1, 1951, and ending November 30, 1961. Respondent has occupied said premises and has been in continuous possession thereof since December 1, 1951. The rent for the term of the lease was $51,000, payable in advance in equal monthly installments of $425.

The lease was prepared by Mr. Dale R. Cowen of Isaac T. Cook Company, the agent in charge of management of the Paul Brown Building with full authority to make leases. Appellant, George W. Warnecke, acquired the Paul Brown Building either the latter part of 1953 or early in 1954.

Included in the aforementioned lease is the following escalator clause:

"Anything to the contrary notwithstanding the Lessee agrees that in the event the average scheduled rate for the total rentable area of office space in the Paul Brown Building from the second to the sixteenth floors inclusive shall have been increased from its present average annual rate of three dollars and eight cents ($3.08) per square foot by December 1, 1956, then in the event the present rate of $425 per month for the herein leased premises shall be increased the same proportionate amount as the percentage increase of the average office space rate in effect December 1, 1956, bears to three dollars and eight cents ($3.08), said increased rental rate to be paid by Lessee each and every month of the then remaining five years of this lease. In the event said average annual rate for the office space area of the Paul Brown Building is less than three dollars and eight cents ($3.08) on December 1, 1956, then in that event the Lessee may cancel and terminate this lease by giving the Lessor ninety (90) days prior written notice provided the Lessor receives said notice prior to December 31, 1956."

Plaintiff received monthly bills for rent at the rate of $425 from December 1, 1951, to December 1, 1956, which bills were regularly paid. Likewise, monthly rental statements for $425 were received by plaintiff for the period from December 1, 1956, through November 30, 1957, which bills were paid monthly.

Some time in the early part of October, 1957, Mr. Carl O. Kamp, Sr., Executive Vice-President of plaintiff association, telephoned Mr. A. F. Jaquier, who was then manager of the Paul Brown Building, and requested that he come to see Mr. Kamp, Sr., about some remodeling of the leased premises which plaintiff contemplated. Mr. Jaquier then called at the plaintiff's offices and was told by Mr. Kamp, Sr., that plaintiff desired to do this remodeling and, since it would be expensive, inquired whether plaintiff might obtain an option to renew the lease or enter into a new lease. Mr. Jaquier told Mr. Kamp, Sr., that the existing lease should not be disturbed; that plaintiff was a satisfactory tenant; and that the chances of renewing the lease at the end of the term were good. Mr. Jaquier also told Mr. Kamp, Sr., that it would be necessary to secure permission of the landlord before commencing the contemplated repairs. Mr. Jaquier also told Mr. Kamp, Sr., and Mr. Carl O. Kamp, Jr., who was present at this interview, that he had read their lease and noted that it contained an escalator clause. Mr. Jaquier testified at the trial that he further informed Mr. Kamp, Sr., and Mr. Kamp, Jr., that there could be a substantial rate increase pursuant to the escalator clause and that this increase could be in the neighborhood of 10%. Jaquier also stated he told the Kamps he would have a study made and let them know the amount. Both Mr. Kamp, Sr., and Mr. Kamp, Jr., testified they recalled Mr. Jaquier's reference to the escalator clause, but denied that he made any mention of an increase in the rent.

Mr. Kamp, Sr., also testified he knew that the lease contained the escalator clause, having read it some time prior to his conversation with Jaquier. In that conversation, Mr. Jaquier told the Kamps to submit their plans to him for his approval. Thereafter, in the latter part of October, the plans and specifications were prepared, and were submitted to Mr. Jaquier for his approval the early part of November. On November 5, 1957, Mr. Jaquier advised the plaintiff by letter that he approved the remodeling program, subject to plaintiff's furnishing certain insurance, a copy of the St. Louis Building Department's approval of the alterations, a completion bond, and waiver of lien forms from the general contractor and all subcontractors. These were apparently

furnished and the contemplated work was commenced about November 10, 1957. A contract for the remodeling work was entered into by plaintiff some time prior to the date the work started. The remodeling work was completed and the overall cost was in excess of $8,000.

While the remodeling work was in progress Mr. Carl O. Kamp, Sr., received a letter from Mr. Jaquier dated November 19, 1957. This letter was introduced into evidence as plaintiff's Exhibit 5, and is as follows:

"Dear Mr. Kamp:

"You will recollect that about a month ago we discussed the provisions of your lease which permit of a revision in rate effective December 1, 1956, in accordance with a formula set forth in the lease.

"We have employed the services of Jacquemin, Chatterton and Schlossstein, Certified Public Accountants, who have determined that a rent increase (following the formula) is applicable. The increase is 21.1%. A copy of their report is enclosed for your files. For obvious reasons we request that the information contained in the report be held confidential.

"Effective December 1, 1957, and for the balance of your lease term, we will bill you monthly at the new rate of $514.68.

"With your December, 1957, statement we will also bill you for the retroactive amount due us ($1,076.10) which sum represents the period December 1, 1956 through November 30, 1957."

A copy of the report of the accountants mentioned in said letter and enclosed therein was introduced as plaintiff's Exhibit 6, and is as follows:

"Dear Mr. Jaquier:

"In accordance with your request we have made a computation of the average scheduled rent rate for the total rentable area of office space in the Paul Brown Building, from the second to the sixteenth floors inclusive, from data and information made available to us.

"Our computation comprised the listing of all rentable space by floors, taking in consideration the square foot area and scheduled rent per month for such space. From this we determined that the average scheduled rent per square foot on December 1, 1956 was $3.73. A review of the lease of Conservative Federal Saving & Loan Association, dated December 1, 1951, indicated the rate per square foot at that time was $3.08. The present average rate represents an increase of 21.10%.

"Detailed working papers pertaining to our determination are contained in our files and will be presented on request. * * *."

Thereafter, plaintiff received a bill for the December, 1957, rent in the amount of $514.68, and on January 15, 1958, plaintiff received a bill for $1,076.10 for additional rent of the premises for the period from December 1, 1956, through November 30, 1957. Monthly bills for $514.68 for rental of the premises were received by plaintiff from January through May of 1958. Plaintiff paid these monthly bills under protest. No part of the bill for $1,076.10 was paid by plaintiff.

Neither of the Kamps had any knowledge as to what the "average scheduled rental rate" for office space was from the second to the sixteenth floor of said building. Mr. Jaquier testified on cross-examination he did not know what records defendant had that showed the average rental rate in 1951 was $3.08 per square foot, but that defendant did have such records. Mr. Jaquier assumed his present position on August 1, 1957. He stated that the Paul Brown Building for the last fifteen years had been in the process of being air conditioned, and that when installed it was furnished as a part of the rent. In some instances an additional charge was made for air conditioning. Also on cross-examination, Mr. Jaquier testified defendant probably rented space to the General Electric Company for a lesser amount than that for which the space was listed, for the reason that said company had expended "a lot of money on re-

furbishing and remodeling the premises."
Mr. Jaquier testified that other up-grading
of rent for office space did not occur "a
great deal * * * only that we repainted
the offices a little more frequently and
maybe put in venetian blinds." Plaintiff
furnished its own air conditioning, and no
additional rent was charged it by reason
of any air conditioning.

Plaintiff's petition alleged that it was in-
tended and agreed that since the average
scheduled rate for the total rentable area
of office space in the Paul Brown Building
from the second to the sixteenth floor in-
clusive was within the exclusive knowledge
of the lessor, said lessor had the obligation
to notify lessee on or before December
1, 1956, of the average scheduled rate if
there was any variation from $3.08 per
square foot; that the lessor failed to notify
lessee of any such change, and for that
reason lessor waived his right to any in-
crease in rents.

It was further alleged that defendant was
guilty of laches by reason of his failure
to notify plaintiff on December 1, 1956, of
an increase in monthly rental—plaintiff
having thereafter, with the knowledge of
the lessor, made improvements to the leased
premises which it would not have done had
it been notified, as aforesaid.

It was then pleaded that defendant was
estopped from seeking additional rent. The
basis for said plea was that defendant,
knowing that plaintiff's operations were un-
der the scrutiny of examiners for an agency
of the Federal Government, and that plain-
tiff's expenditures for office space and over-
head were limited, did nevertheless approve
and give permission to plaintiff to improve
the premises, knowing that plaintiff's plans
were predicated upon a monthly rental of
$425 per month for the balance of the
term.

It was further alleged that demanding
and accepting $425 per month for the period
from December 1, 1956, through November
30, 1957, without complaint or objection,
constituted an accord and satisfaction; and

further, that the parties by their conduct
had created a novation and modified the
lease by mutual consent, so that the terms
of the lease as modified provided for the
payment of $425 monthly until November
30, 1961.

The prayer of the petition was that the
court determine the true meaning of the
contract; that the court adjudge the rights
of the parties; that defendant be restrained
from asserting any claims for rental in
excess of $425 per month for the premises
in question; and for general relief.

Appellant by his answer denied that
notice on or before December 1, 1956, was
necessary to make the escalator clause
operative; denied that defendant waived
his right to a rent increase; denied that
lessor was guilty of laches; denied that
defendant was estopped from seeking addi-
tional rent, or that there had been an ac-
cord and satisfaction or novation as al-
leged. It was further alleged that the
lessee was indebted to the lessor for addi-
tional rent for the period from December
1, 1956, through November 30, 1957, in the
amount of $1,076.10, and was further ob-
ligated to pay rental at the monthly rate
of $514.68 until the termination of the
lease.

The prayer of the answer was for judg-
ment against plaintiff in the sum of $1,-
076.10, together with interest; to declare
respondent indebted to appellant for rent
at the monthly rate of $514.68, commencing
December 1, 1957, until the termination of
the lease; and to give judgment for de-
fendant for all amounts unpaid from De-
cember 1, 1957, to the date of judgment,
with interest; and judgment for defend-
ant for attorneys' fees and other expenses
incurred in enforcing the obligations of
the lease.

By its decree the court found that since
"the average scheduled rate for the total
rentable area of office space in the Paul
Brown Building from the second to the
sixteenth floor inclusive" as it would be
on December 1, 1956, was within the ex-

clusive knowledge of the lessor, it was implied from the escalator clause that the lessor was under an obligation to notify the lessee by December 1, 1956, if said average scheduled rate would either increase or decrease from $3.08 per square foot on December 1, 1956; that no such notice was given; that the notice given to plaintiff on November 19, 1957, advising plaintiff that said scheduled rate had been increased from $3.08 per square foot to $3.73 per square foot was ineffective for the reason that it was not timely; and that defendant "by his failure to notify the plaintiff association by December 1, 1956, of a change in the average scheduled rental rate to be in effect on December 1, 1956, and by his acceptance of the sum of $425 each month from December 1, 1956, through November 30, 1957, waived any right he might have had under the aforementioned clause in said lease to claim any increase in rent from the plaintiff during the remaining five year period of the lease, running from December 1, 1956, to November 30, 1961." The court further found that the defendant was not entitled to the allowance of any attorney's fee under the lease for the reason that the defendant had not become involved in the suit at bar "without lessor's fault." The court then decreed:

"1. That petition of the plaintiff filed herein be, and it is hereby sustained.

"2. That the true meaning and construction of the Lease between the Conservative Federal Savings and Loan Association and the Paul Brown Realty & Investment Corporation, a corporation, entered into on September 11, 1951, is that the monthly rental to be paid by the Lessee to the Lessor, or his successor in interest, is the sum of $425.00 monthly during the entire ten year period of said lease, unless the average scheduled rate for the total rentable area of office space in the Paul Brown Building from the second to the sixteenth floors inclusive, in-

creased or decreased from $3.08 per square foot on December 1, 1956, and provided that notice of such increase or decrease was given by the Lessor to the Lessee by December 1, 1956; that in the absence of any such notice of such increase or decrease, the intent prevails that the rental for the premises covered by said Lease continue at $425.00 monthly.

"3. That defendant, his agents and servants are permanently enjoined and restrained from asserting any claim or claims against plaintiff for any rental in excess of $425.00 per month for the premises numbered 200 and 202 North Ninth Street, St. Louis, Missouri, for the period running from December 1, 1956, to November 30, 1961.

"4. That the claim of the defendant for affirmative relief in the form of a judgment against the plaintiff for additional rent in the sum of $1,076.10 for the period running from December 1, 1956, through November 30, 1957, and for attorney's fee be, and it is hereby denied.

"5. That the costs of these proceedings be taxed against the defendant."

Appellant's first point is that the court erred in holding that under the terms of the lease there was an implied obligation on the lessor to notify the lessee of an increase in the average rent before the escalator clause would become operative.

■ It is a general rule of law that when parties reduce their agreements to writing it is presumed that the instrument contains their entire contract, and the court will not read into it additional provisions unless this be necessary to effectuate the intention of the parties as disclosed by the contract as a whole. Implied obligations must rest entirely upon the presumed intention of the parties, as gathered from the terms actually expressed in the writing it-

self; and it must appear that it was so clearly within the contemplation of the parties that they deemed it unnecessary to expressly stipulate with reference thereto, or it must appear that it is necessary to infer such an obligation to effectuate the full purpose of the contract. It is not enough to say that the implied covenant is necessary to make the agreement fair, or that without such covenant it would be improvident or unwise, or that the contract will operate unjustly. 21 C.J.S. Covenants § 9, p. 888; 17 C.J.S. Contracts § 328, p. 778; 21 C.J.S. Covenant, Action of § 14, p. 868; 14 American Jurisprudence, Express and Implied Covenants, § 14, p. 490; Johnson v. Missouri-Kansas-Texas R. Co., Mo., 216 S.W.2d 499; Grass v. Big Creek Development Co., 75 W.Va. 719, 84 S.E. 750, L.R.A.1915E, 1057; Freeport Sulphur Co. v. American Sulphur Royalty Co., 117 Tex. 439, 6 S.W.2d 1039, 60 A.L.R. 890. No implied provision can be inserted as against the express terms of the contract, or to supply a covenant upon which it was intentionally silent. Foley v. Euless, 214 Cal. 506, 6 P.2d 956. The court, in Cousins Inv. Co. v. Hastings Clothing Co., 45 Cal.App.2d 141, 113 P.2d 878, loc. cit. 882, has summarized the matter in the following language:

"Summarized, therefore, the rules deducible from the foregoing authorities controlling the exercise of judicial authority to insert implied covenants may be stated as follows: (1) The implication must arise from the language used or it must be indispensable to effectuate the intention of the parties; (2) it must appear from the language used that it was so clearly within the contemplation of the parties that they deemed it unnecessary to express it; (3) implied covenants can only be justified on the grounds of legal necessity; (4) a promise can be implied only where it can be rightfully assumed that it would have been made if attention had been called to it; (5) there can be no implied cove-

nant where the subject is completely covered by the contract."

 Keeping in mind the above rules, we find nothing in the language employed in the lease to support the conclusion of the trial court that there was an implied obligation on the lessor to notify the lessee by December 1, 1956, of an increase in the average scheduled rent for the total rental area. Under the express terms of the contract the amount of the increased rent therefore became due on December 1, 1956, without reference to whether the amount had at that time been ascertained, or the lessee notified thereof. We use the word "due" in this connection in its broadest sense, i. e., as "owing", though unascertained and not immediately payable. See Carr v. Thompson, 67 Mo. 472; Wyman v. Kimberly-Clark Co., 93 Wis. 554, 67 N.W. 932; and cases construing said term collected in Vol. 13 Words & Phrases, Due, pp. 435–452.

It is clear from said contract that one of its purposes was to provide for additional rent if there was an increase in the average scheduled rental rate for the entire rentable area. To effectuate this intention it is not necessary to infer an implied obligation on the part of the lessor to notify the lessee of said increase before said rent became a debt owed, although such an implied covenant would be necessary before said increased amount would become payable. But as to the latter, no specified time for notice was necessary to effectuate the intention of the parties.

Respondent contends that it is necessary to imply an obligation on the lessor to notify the lessee by December 1, 1956, of any change in the average rent in order that the lessee might exercise its right to cancel the lease. In the instant case we are not concerned with the lessee's right to cancel the lease on the ground that the average rate was less than $3.08 per square foot on December 1, 1956. Perhaps if such a case were presented it could be reasonably said that the lessor should supply such informa-

tion upon request of the lessee. It would seem that in a case of that kind such an implied obligation would be necessary in order to fully protect the rights of the lessee under the lease.

It is further contended that since the lease was prepared by the lessor's agent, and open to different constructions, it must be strongly construed against appellant. It is urged that the application of this principle necessitates a holding that a notice should be given prior to December 31, 1956, as to the average scheduled rate in effect on December 1, 1956. The above mentioned rule is only applied when all other means of construction fail. Larson v. Crescent Planing Mill Co., Mo.App., 218 S.W.2d 814, loc. cit. 820; Commercial Electrical Supply Co. v. Missouri Commission Co., 166 Mo.App. 332, 148 S.W. 995; 17 C.J.S. Contracts § 324, p. 751. In our judgment, it is not necessary to resort to said rule to ascertain the meaning of the lease in question since the intent of the parties may be gathered from the terms actually expressed in the writing itself. From these terms no covenant for notice by December 31, 1956, of a change in the average scheduled rate as of December 1, 1956, can be implied, except upon request of the lessee. To do so would amount to enlarging the terms of the contract, which we may not do.

The escalator clause is clear and definite in its terms. It omits any reference to notice to the lessee of any increase in the average rental. From reading the entire clause it is our judgment that such omission was intentional. No implied provision can be inserted to supply an obligation concerning which the contract is intentionally silent. Grass v. Big Creek Development Co., 75 W.Va. 719, 84 S.E. 750, L.R.A. 1915E, 1057.

It is further urged that the provision for an increase in the rent in question is void for lack of mutuality, for the reason that the average scheduled rate could be increased or decreased at the wish, will or pleasure of the lessor. Again, we are not impressed with this argument. The average scheduled rate for the total rentable area should be, and in our opinion was, determined by good faith pricing of the space in question according to current market values. Fraud in the fixing of same is not to be presumed and, in fact, there is no suggestion either in the pleadings or the evidence of any deviation from that method, or of any unfairness in fixing the scheduled rates. Such issue was not presented by the pleadings or evidence. It might be said that it was unwise for lessee to enter into such a contract where unfairness might be practiced against it, but that is no reason for declaring the provision void. We cannot alter the terms of the contract merely because the court is of the opinion there is a possibility that some of the provisions of the contract might operate unfairly to one of the parties. Freeport Sulphur Co. v. American Sulphur Royalty Co., supra; Foley v. Euless, supra; Grass v. Big Creek Development Co., supra. We know of no principle under which it could be said there was lack of mutuality with reference to plaintiff's promise to pay the increased rent under the terms of the contract.

Appellant's next point is that the court erred in holding that defendant waived his right under the escalator clause of the lease.

In support of the court's ruling, respondent urges that the lessor waived his right to an increase by his action in billing and accepting $425 as the monthly rental from December 1, 1956, through November 30, 1957, and in permitting the lessee to expend in excess of $8,000 in improvements without advising it of the contemplated increase in the monthly rental.

Waiver is the intentional relinquishment of a known right, and to be effective, absent any element of estoppel, must be founded on or supported by a consideration, especially if substantial, as distinquished from formal, rights are involved. Fairbanks, Morse & Co. v. Baskett, 98 Mo. App. 53, 71 S.W. 1113; Doerr v. National

Fire Ins. Co. of Hartford, 315 Mo. 266, 285 S.W. 961, 54 A.L.R. 1336; Mitchell v. American Mutual Ass'n., 226 Mo.App. 696, 46 S.W.2d 231; Pacific States Corp. v. Hall, 9 Cir., 166 F.2d 668.

Although the intent to waive may be implied from the declarations or conduct of one of the parties, it must clearly appear. 31 C.J.S. Estoppel § 69, p. 263. In the case at bar appellant's billing and acceptance of $425 as monthly rental and the long delay in asserting his claim for increased rental would, when considered separately, seem to indicate an intention to waive, but when the whole evidence is considered such inference cannot be justified. We refer specifically to the October, 1957, conversation as repelling said inference. Even if we consider only respondent's version of that conversation, the intention not to waive appears. According to the testimony of both Mr. Kamp, Sr., and his son, the escalator clause, concerning which they were both familiar, was called to their attention by Mr. Jaquier. Why did Mr. Jaquier do this if not to put respondent on notice that appellant possessed a right which he intended to assert in appellant's behalf. Mr. Jaquier testified that he further informed the Kamps that there could be a substantial rate increase under the escalator clause which could be in the neighborhood of 10%; and that he further told them he would have a study made and let them know the amount of increase. Of course, both Mr. Kamp, Sr., and Mr. Kamp, Jr., denied this testimony, but in our judgment the testimony of Mr. Jaquier is probably a truer version of the conversation. Mere mention of the escalator clause by Jaquier would be pointless. But either version indicates an intention to stand on the terms of the contract. We do not think that under the facts and circumstances it can be said that an intent to waive the increased rent was shown.

In the case at bar appellant's right to additional rent under the escalator clause was unquestionably of a substantial nature. Does the evidence show consideration for the alleged waiver? We think not. No benefit to the appellant or detriment to the lessee to support said alleged waiver was shown. The lessee merely paid appellant the amount of the rent admittedly due. There was not a sufficient showing of consideration to support a waiver.

How about the element of estoppel? In order to establish a waiver based upon estoppel it is essential that the party asserting it show that he has done or omitted to do some act or changed his position to his detriment in reliance upon some representation or conduct of the person against whom the waiver is sought. A change of position which will fulfill this element of estoppel must be actual, substantial, and justified. 31 C.J.S. Estoppel § 72, p. 275. There was absolutely no evidence in the record that respondent was misled to its injury by any positive representation by appellant, or his agent, to the effect that the escalator clause would not be enforced. Nor did either Mr. Kamp or his son testify that the alterations would not have been made had they been promptly advised that appellant would insist on his rights under the said clause. On the contrary, respondent commenced its remodeling work after Mr. Jaquier had called the escalator clause to the attention of two of its officers who had charge of the work. They were put upon notice that there might be a claim presented for an increase in the rent, yet despite this they went ahead with the extensive alterations. Respondent will not be heard to say that it was misled to its injury by the appellant's previous conduct and the delay in asserting his right to said increase.

From what we have said it becomes apparent that the court erred in finding against the defendant on his claim for the increased rental. The amount sought by him in his answer was the sum of $1,076.10 for the period beginning December 1, 1956, to November 30, 1957. There was substantial evidence introduced in support of this claim. It was shown that

the average scheduled rate for the total rentable area of office space in the Paul Brown Building from the second to the sixteenth floors, inclusive, increased from $3.08 per square foot to $3.73 per square foot by December 1, 1956. This evidence is contained in a report of reputable certified public accountants employed by appellant to make a survey of the situation, which report was offered in evidence by the plaintiff. No issue of the accuracy of this survey was raised either by the pleadings or the evidence. The judgment of the trial court should have been in favor of defendant for the amount claimed, with interest from the date of demand.

■■■■ Appellant's final assignment of error is that the court erred in refusing to allow defendant a reasonable attorney's fee. The lease provides: "The lessee agrees to pay all reasonable attorney's fees and all other expenses of the lessor incurred in enforcing any of the obligations of the lessee under this lease, or in any litigation or negotiations in which the lessor shall, without lessor's fault, become involved through or on account of this lease." Defendant's counsel, after detailing the amount of services rendered, testified that a reasonable attorney's fee for those services would be from $350 to $500. In our opinion his estimate of the value of these services was very modest. The trial court should have awarded defendant an attorney's fee within those limits.

In view of our findings, conclusions and rulings above set out, we approve and affirm the following numbered paragraphs of the trial court's findings and declarations, to wit: the 1st, 2nd, 3rd, 4th, 6th, 7th, and 9th. The following numbered paragraphs of the trial court's findings and declarations are set aside, to wit: the 5th, 8th, 10th and 11th, and the judgment based on said findings of the trial court is reversed.

In view of the opinions expressed herein, we make the following findings and declarations:

1. For the reasons hereinbefore set out, this court finds that under the terms of the lease there was no implied obligation on the lessor to notify the Conservative Federal Savings and Loan Association, a corporation, by December 1, 1956, of an increase in the average scheduled rate before the escalator clause would become operative.

2. That notice given to plaintiff by the defendant on November 19, 1957, advising plaintiff that the "average scheduled rate" had been increased as of December 1, 1956, from $3.08 per square foot to $3.73 per square foot, was a timely demand which made payable the accumulated amount of increased rental.

3. That the escalator clause in said lease is not void for lack of mutuality of obligation.

4. That defendant, George W. Warnecke, by failing to notify plaintiff by December 1, 1956, of a change in the average scheduled rental rate to be in effect on December 1, 1956, and by accepting the sum of $425 each month from December 1, 1956, through November 30, 1957, did not waive his right under the escalator clause in said lease to claim an increase in rent for the five year period of the lease from December 1, 1956, to November 30, 1961.

5. That under the terms of the lease and the facts shown, defendant is entitled to a judgment in the sum of $1,076.10, with interest thereon from November 19, 1957.

6. That under the terms of the lease and the facts shown, defendant is entitled to an attorney's fee in the sum of $400.

The findings and judgment of the trial court are reversed and the cause is remanded to the trial court to enter a judgment declaring the rights of the parties in conformity with the findings and declarations of this court; and in favor of defendant for the sum of $1,076.10 with interest thereon from November 19, 1957; for $400 as and for an attorney's fee; and for costs.

WOLFE, P. J., and RUDDY, J., concur.